515 A.2d 988

Welded Tube Company of America, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued April 9, 1986, before President Judge CRUMLISH, JR., Judges ROGERS, CRAIG, MACPHAIL, DOYLE, BARRY and COLINS.

*Richard B. Pearl,* with him, *Bruce S. Haines, Cohen, Shapiro, Polisher, Shiekman and Cohen,* for petitioner.

*Bryan E. Barbin,* Deputy Attorney General, with him, *Eugene J. Anastasio,* Chief, Deputy Attorney General, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE COLINS, September 25, 1986:

Welded Tube Company of America, a Pennsylvania business corporation (taxpayer), has appealed an order of the Board of Finance and Revenue (Board) resettling its corporate net income tax for the year ending January 31, 1980, by which the Board included the gain from the sale of the taxpayer's Philadelphia manufacturing facility as nonbusiness income described by Section

401(3)2.(a)(1)(D) of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7401(3)2.(a)(1)(D).

The parties submitted a Stipulation of Facts which we adopt as our findings of fact:

1. Taxpayer was incorporated under the laws of the Commonwealth of Pennsylvania on April 10, 1952. Taxpayer is authorized to conduct business in the Commonwealth of Pennsylvania and had its principal place of business at 2400 South Weccacoe Avenue, Philadelphia, Pennsylvania 19148 during the tax year ended January 31, 1980. In August 1977, Taxpayer ceased its manufacturing operations at the Weccacoe Avenue location and completed the sale of the premises on February 9, 1979. Pursuant to a lease, Taxpayer retained its executive and administrative office at that location until February 1984. Since February of 1984, Taxpayer has maintained its administrative and executive offices at 1818 Market Street, 36th Floor, Philadelphia, Pennsylvania 19103.

2. Taxpayer is a corporation engaged in the manufacture and sale of welded steel tubing in square, rectangular and round shapes and in a variety of sizes.

3. Prior to 1978, Taxpayer had two manufacturing facilities, one located at 2400 South Weccacoe Avenue, Philadelphia, Pennsylvania, which commenced operations in 1965, and one located in Chicago, Illinois, which commenced operations in 1970. (As used herein the word 'facility' means land and buildings.) On February 9, 1979, Taxpayer sold its Philadelphia manufacturing facility, machinery and equipment for a taxable gain of $2,111,543.

4. Taxpayer filed its corporate net income tax report for the fiscal year ended January 31, 1980, in which it reported its business income to be apportioned as $7,838,962, including the taxable gain of $2,111,543. It also reported nonbusiness income of $274,418. Its self-assessed corporate net income tax was computed at $73,807.

5. On September 8, 1981, the Department of Revenue and the Department of the Auditor General settled Taxpayer's corporate net income tax for the year ended January 31, 1980, by finding business income to be apportioned of $6,001,837 and nonbusiness income of $2,111,543, which resulted in an increase in corporate net income tax determined to be $264,501.85.

6. On December 15, 1981, Taxpayer timely filed a Petition for Resettlement with the Board of Appeals requesting that its business income to be apportioned be increased to $7,993,246 and that there be no gain allocated as nonbusiness income. This Petition would have resulted in Taxpayer's corporate net income tax being resettled to $54,428.

7. On August 20, 1982, the Board of Appeals refused to resettle Taxpayer's corporate net income tax for the year ended January 31, 1980.

8. On November 12, 1982, Taxpayer timely filed a Petition for Review with the Board of Finance and Revenue requesting the corporate net income tax for year ended January 31, 1980, be resettled to $54,428.

9. On April 19, 1983, the Board of Finance and Revenue resettled Taxpayer's net income tax

by reducing the taxable gain in issue to $1,991,409 and thereby found Taxpayer's business income to be apportioned to be $6,137,000 and nonbusiness income of $1,991,409. Taxpayer's corporate net income tax was thereby reduced to $251,886.85.

10. The Board of Finance and Revenue rejected Taxpayer's claim that the gain on the sale of the Taxpayer's Philadelphia manufacturing facilities, machinery and equipment was business income.

11. On May 11, 1983, the Board of Finance and Revenue mailed a copy of its Order to the Taxpayer.

12. Taxpayer timely filed its Petition for Review with this Court on June 8, 1983, and filed a bond as security on August 4, 1983.

13. Since it commenced business, Taxpayer has manufactured and sold welded steel tubing in various sizes and shapes. Taxpayer produces round tubular products in addition to the traditional square and rectangular shapes. The round tubular products can be used in a variety of applications, including structural, mechanical and machinery manufacturing, in addition to the casing and line pipe used in the oil industry and other similar applications. Taxpayer's product is manufactured by a process utilizing an integrated mill or line. This involves passing coiled steel, slit into appropriate widths, through rollers to form tubes, which are then welded and cut to length.

14. From the date of its incorporation, April 10, 1952, until 1965, Taxpayer's Pennsylvania manufacturing facility was located at Water and McKean Street in Philadelphia, Pennsylva-

nia. In 1965 Taxpayer moved its manufacturing operations to 2400 Weccacoe Avenue, Philadelphia. From 1965 until August 28, 1977, Taxpayer conducted its manufacturing operations at the Philadelphia facility located at 2400 South Weccacoe Avenue, Philadelphia, Pennsylvania.

15. In 1970, Taxpayer commenced operations in Chicago, Illinois. Since 1978, all of Taxpayer's manufacturing operations have been conducted at the Chicago facility.

16. The Philadelphia manufacturing facility had incurred losses from operations for three fiscal years up to and including January 31, 1978.

17. In January of 1978, Taxpayer determined not to reopen its Philadelphia manufacturing facility. The decision of Taxpayer to close the Philadelphia manufacturing facility was part of a plan to reorganize the Taxpayer's manufacturing activities.

18. As part of the reorganization, Taxpayer on February 2, 1979, completed the sale of its Philadelphia manufacturing facilities, machinery and equipment.

19. The 2400 South Weccacoe Avenue manufacturing facility, consisting of land and a building with manufacturing space of approximately 280,000 square feet, was sold for a taxable gain of $1,840,639; the machinery and equipment were sold for a taxable gain of $270,904.

20. During this 12-year period, improvements were made to the Philadelphia facility which increased manufacturing space from the original 30,000 square feet, which were purchased in 1964, to the 280,000 square feet in use at the time the manufacturing process ceased in

August of 1977. The machinery and equipment which were sold had been purchased by the Taxpayer during the period beginning in 1964 and ending in 1976.

21. As part of the reorganization of Taxpayer's manufacturing activities, one entire production line, identified as the '700 mill', was moved to the Chicago facility.

22. The Philadelphia manufacturing facility had an original cost including improvements of $3,682,891.97, which after depreciation had a tax basis of $1,687,971. The proceeds from the sale of these items were $3,528,610, resulting in a gain for tax purposes of $1,840,639. Equipment and machinery sold as a result of this closure had an original cost of $278,370.50 and was sold for $265,920, resulting in a gain for tax purposes of $270,904.00 after consideration of depreciation and recapture.

23. The original cost of the machinery and equipment (principally the '700 mill') transferred to the Chicago facility was $1,918,000.00, plus original installation costs for the mill at the Philadelphia facility of $1,152,000. The transfer of the machinery and equipment necessitated building an addition to the Chicago facility to house the mill, costing $807,665, plus installation costs of $1,319,920.

24. $3,308,530 of the proceeds from the sale of the Philadelphia facility was used to extinguish existing debts of Taxpayer at the time of sale, and $486,000 of the proceeds was used for the expansion of the Chicago facility during the tax year ended January 31, 1980.

25. In computing its Pennsylvania corporate net income tax for fiscal year ended January

31, 1980, Taxpayer considered the gain on the sale of its manufacturing plant, machinery and equipment to be business income and included this gain in its Pennsylvania income to be apportioned. Taxpayer, on its Illinois corporate income tax return, reported the gain on the sale of its Philadelphia manufacturing facility, machinery and equipment as business income. The Illinois return was filed on September 5, 1980. Illinois is an 'audit' state and has three years in which to audit the Taxpayer. The state of Illinois did not audit Taxpayer's fiscal 1980 tax return. Pennsylvania is a 'settlement' state.

26. During the fiscal year ended January 31, 1980, Taxpayer earned interest totalling $412,500. The principal upon which this interest was earned came primarily from the temporarily invested proceeds of the sale of the Philadelphia manufacturing facility, machinery and equipment.

27. On its original tax report, Taxpayer classified $274,418 of the total $412,500 of interest as nonbusiness income allocable 100% to Pennsylvania. The balance of the interest was reported to be business income. Taxpayer similarly classified interest on its Illinois corporate income tax return.

28. By letter dated July 27, 1981, Taxpayer requested that the $274,418 of interest income be reclassified as business income in accordance with 61 Pa. Code §153.24(b)(3), Example 4.

29. On September 8, 1981, the Department of Revenue and the Department of the Auditor General settled Taxpayer's corporate net income tax by finding nonbusiness income of $2,111,543 and business income to be appor-

tioned of $6,001,837. Business income as settled included the $274,418 of interest income originally classified as nonbusiness income.

30. The sole issue to be decided by this court is whether the gain from the sale of Taxpayer's manufacturing facility, machinery and equipment was business income to be apportioned or nonbusiness income to be allocated.

31. If this court finds the taxable gain from the sale of Taxpayer's manufacturing facility, machinery and equipment was nonbusiness income, the order of the Board of Finance and Revenue should be affirmed.

32. If this court finds the taxable gain from the sale of Taxpayer's manufacturing facility, machinery and equipment was business income, judgment should be entered for the Commonwealth of Pennsylvania in the amount of $54,428 plus appropriate interest.

33. The parties hereto reserve the right to object to the relevancy of any stipulation herein contained.

### Discussion

We agree with the parties that the sole question for our determination is whether the capital gains from the sale of the taxpayer's Philadelphia manufacturing facility constituted apportionable business income, as the taxpayer so asserted.[1]

---

[1] We note that the Departments of Revenue and the Auditor General settled the taxpayer's tax liability to include $274,418 of interest income earned in the investment of the proceeds of the sale of the Philadelphia facility as apportionable business income. The taxpayer now argues that we are constrained to classify the proceeds of the sale as business income because, to do otherwise, would lead to the anomalous classification of the proceeds as *non-*

Article IV of the Code imposes a corporate net income tax on all corporations foreign and domestic "doing business in this Commonwealth" or "having capital or property employed or used in this Commonwealth." *See* 72 P.S. §7401-7412. Since the corporate net income tax is an excise tax on the privilege of earning income, the Commonwealth may constitutionally subject to tax only that part of the income reasonably related to the privilege exercised in Pennsylvania. *Hellertown Manufacturing Co. v. Commonwealth*, 25 Pa. Commonwealth Ct. 90, 358 A.2d 424 (1976), *aff'd*, 480 Pa. 358, 390 A.2d 732 (1978). The Code establishes a system of allocation and apportionment for the determination of net income of corporations engaged in taxable activities within and outside the Commonwealth. *Smithkline Beckman Corp. v. Commonwealth*, 85 Pa. Commonwealth Ct. 437, 482 A.2d 1344 (1984). Business income, defined in Section 401(3)2.(a)(1)(A), 72 P.S. §7401(3)2.(a)(1)(A), as "income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations" is subject to apportionment. 72 P.S. §7401(3)2.(a) (9). Nonbusiness income, defined in Section 401(3)2.(a) (1)(D), 72 P.S. §7401(3)2.(a)(1)(D), as "all income other than business income," is allocated to the situs of the income producing property.

The taxpayer argues that the proceeds realized from the sale of its Philadelphia manufacturing plant, equip-

---

*business* income but the interest accruing thereon as *business* income. We disagree. As the parties agreed that the sole issue for our determination was the classification of the gain from the sale, we believe the taxpayer has waived our consideration of the propriety of the classification of the interest income.

ment and machinery constituted income derived in the regular course of its trade and business operations and were, therefore, "business income" properly apportionable between the states in which it did business, here Pennsylvania and Illinois.[2]

Counsel has not provided this Court, and our research has not revealed, any Pennsylvania case law distinguishing the terms "business" and "nonbusiness" income within the purview of the Code. The courts of other states which have taxing codes similar to ours (this portion[3] of the Pennsylvania statute was adopted from the language contained in the Uniform Division of Income for Tax Purposes Act (UDITPA)) have enunciated two tests inherent in the UDITPA definition of "business income" by which to evaluate whether certain income is properly classified as business income or nonbusiness income.

The first clause of the Code, and UDITPA, definition of business income, specifying "income arising from transactions and activity in the regular course of the taxpayer's trade or business," sets forth the so-called transactional test: gain is classified as business income if it is derived from transactions in which the taxpayer regularly engages. *See District of Columbia v. Pierce*, 462 A.2d 1129 (D.C. App. 1983); *Atlantic Richfield Co. v. Colorado*, 198 Colo. 413, 601 P.2d 628 (1979); *McVean & Barlow, Inc. v. New Mexico Bureau of Revenue*, 88 N.M. 521, 543 P.2d 489, *cert. denied*, 89 N.M. 6, 546

---

[2] We note again that the taxpayer reported the subject gain as apportionable business income on its Illinois Corporate Income Tax return filed on September 5, 1980. The state of Illinois did not audit the taxpayer's fiscal 1980 tax return.

[3] *Despite the taxpayer's assertions to the contrary, our research reveals that Pennsylvania has not adopted the Uniform Division of Income for Tax Purposes Act. See* 7A U.L.A. 331 (1986).

P.2d 71 (1975); *Western National Gas v. McDonald,* 202 Kan. 98, 446 P.2d 781 (1968).

Under this test, the particular transaction giving rise to the income is measured against the "frequency and regularity" of similar transactions in past practices of the business. *Atlantic Richfield,* 198 Colo. at 417, 601 P.2d at 631.

The taxpayer's subsequent use of the subject income is also relevant in the determination of business income. *General Care Corp; Champion International Corp. v. Bureau of Revenue,* 88 N.M. 411, 540 P.2d 1300 (1975). Under the transactional test, earnings held for use in the regular course of on-going business operations or expended in the acquisition of assets to be used in future business operations have been held to be business income. *Champion* (short term investment income necessary for future business activities classified as business income). Conversely, the gain accruing from the sale of assessts pursuant to business liquidation has been held under this same test to be nonbusiness income arising from a transaction of an extraordinary nature outside the regular course of the taxpayer's trade or business. *McVean; Western Natural Gas.*

The second clause of the definition sets forth an alternative and independent,[4] "functional" test in the view of other jurisdictions, by which earnings may be characterized as business income: income from "tangible and intangible property if the acquisition, management and disposition of the property constitute *integral parts* of the taxpayer's regular trade or business." (Emphasis added.) Under this test, the gain arising from the sale of an asset will be classified as busi-

---

[4] Proponents of the transactional test interpret the second clause as clarifying language which merely modifies the substantive part of the definition. *General Care Corp.*

ness income if the asset produced business income while it was owned by the taxpayer. *General Care Corp. v. Olsen,* 515 Tenn. 993, 705 S.W.2d 642 (1986). The extraordinary nature or infrequency of the transaction is irrelevant. *Atlantic Richfield.*

We are persuaded that, under either test, the capital gains at issue here constituted business earnings within the purview of the Code, properly apportionable between the Commonwealth and Illinois.

The record discloses that the taxpayer purchased the Philadelphia property, site of its manufacturing facility, in 1957 and then purchased thirteen additional contiguous parcels of land totaling some twelve acres between 1958 to 1963 for the expansion of this plant. In 1974, the taxpayer also acquired thirty-five acres of land in Alabama as a prospective site of a new manufacturing facility, ultimately never constructed. The taxpayer sold the Philadelphia facility in 1977 when it became unprofitable and sold the Alabama property in 1982, after the tax years in question here.

The Board argues that the taxpayer was not regularly engaged in the buying and selling of manufacturing plants and the disposition of real property only twice over the course of a thirty year corporate history cannot constitute a "systematic and recurrent" business practice so as to satisfy the test formulated in *Atlantic Richfield* indicative of business income.

In our view, the narrow interpretation proposed by the Board is not supported by the wording of the statute. The statute makes no reference to transactions and activity in the regular course of the taxpayer's *principal* business. As we read the statute, and we do so mindful of 1 Pa. C.S.A. §1928 providing that statutes imposing taxes are to be narrowly construed, it makes no difference whether income derives from the main business, the occasional business or the subordinate

business so long as the income arises in the regular course of business.

While the principal business of the taxpayer comprised the manufacture of welded tube, it was a regular practice of this taxpayer to acquire property in the expansion of its business. We consider that such property constituted an integral part of its business operations and that its disposition generated business income.

We are further persuaded in our determination by the taxpayer's subsequent use of the gain, which use, as we have noted, is a criterion in the classification of business income. Samuel H. Landy, Executive Vice President of taxpayer, testified that the economics of changing market demands and escalating transportation costs made the operation of the Philadelphia facility unprofitable and that the company decided to consolidate its manufacturing operations within its existing and profitable Chicago plant. There is no suggestion on the record that the closing of the facility contemplated the cessation of operations of the taxpayer, as in *General Care Corp., McVean,* and *Atlantic Richfield,* and, in fact, the parties characterized the taxpayer's actions in the Stipulation as a "reorganization" of its "manufacturing activities." Gain from the sale was invested in on-going operations. As the parties stipulated, $3,308,503 of the proceeds of the sale of the Philadelphia facility was used by the taxpayer to extinguish existing debts and $486,000 of the proceeds was used to expand the Chicago facility. Moreover, the taxpayer moved one entire production "line" from the Philadelphia plant to the Chicago facility, at considerable costs of transfer and modification.

Similarly, we find the gain generated by the sale of the remaining Philadelphia machinery and equipment encompassed by the Code definition of business income. Mr. Landy testified that the company "regularly"

bought and sold machinery and equipment in keeping with advances in technology and changing market demands for particular products. In our view, such recurrent practices readily satisfy the demands of the transactional test.

We conclude that the Board improperly found the capital gains at issue here to be "nonbusiness income" solely allocable to the Commonwealth.

Accordingly, we reverse the order of the Board.

## ORDER

AND NOW, September 25, 1986, the order of the Board of Finance and Revenue, No. R-6392, resettling Petitioner's Corporate Net Income Tax for the year ending January 31, 1980 is reversed. The tax liability of the Petitioner shall be $54,428.00, plus appropriate interest. If no exceptions are filed within thirty (30) days of the filing of this Order, the Chief Clerk of the Commonwealth Court is directed to enter judgment in the above-captioned matter.