615 A.2d 841

**LAUREL PIPE LINE COMPANY, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 8, 1992.

Decided Aug. 20, 1992.

136

138

George T. Bell, for petitioner.

Michael A. Roman, for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

PALLADINO, Judge.

Petitioner Laurel Pipe Line Company (Taxpayer) seeks review of an order of the Board of Finance and Revenue which refused to characterize as nonbusiness income Taxpayer's gain on the sale of an idle pipeline and corresponding equipment, land, rights of way, buildings, oil tanks, and similar real and personal property. We agree with the order of the Board of Finance and Revenue and enter judgment for the Commonwealth of Pennsylvania (Commonwealth).

■ Appeals from the Board of Finance and Revenue are de novo proceedings before the commonwealth court. *Doyle Equipment Co. v. Commonwealth*, 117 Pa.Commonwealth Ct. 38, 542 A.2d 644 (1988). Consequently, the record for such appeals is not certified by the Board of Finance and Revenue but, rather, is created before the commonwealth court. *Id.* In the present case, the record before the commonwealth court consists of a stipulation of facts entered into by Taxpayer and the Commonwealth (i.e., the taxing authority) pursuant to Pa.R.A.P. 1571(f). We hereby adopt the parties' stipulation of facts as our fact-findings in this case.

Taxpayer is an Ohio corporation that transports petroleum products by pipelines from refinery connections in Philadelphia, Pennsylvania to Pittsburgh, Pennsylvania and to intermediate points. Stipulation at ¶¶ 1–2. From 1976 to 1983, Taxpayer also operated a 110–mile, petroleum products pipeline between Aliquippa, Pennsylvania and Cleveland, Ohio. *Id.* at ¶ 5. In 1983, Taxpayer ceased operation of the Aliquippa–Cleveland pipeline. *Id.* On December 22, 1986, Taxpayer sold the idle Aliquippa–Cleveland pipeline and corresponding equipment, land, rights of way, buildings, oil tanks, and similar real and personal property [1] for a gain of $3,766,047. *Id.* The present appeal asks us to determine how this gain may be

1. For the sake of convenience, we shall hereafter use the term pipeline to include the Aliquippa–Cleveland pipeline as well as all the corre-

assessed for the purpose of computing Taxpayer's 1986 Pennsylvania corporate net income tax.[2]

In its 1986 corporate net income tax return, Taxpayer treated the gain from the sale of the Aliquippa–Cleveland pipeline as nonbusiness income and allocated a portion of the gain to Pennsylvania and a portion of the gain to Ohio. *Id.* at ¶ 6. The gain was allocated between Ohio and Pennsylvania by using the ratio of the length of the pipeline located in each state (42.3 miles in Pennsylvania and 67.7 miles in Ohio) to the total pipeline length of 110 miles ("pipeline ratio"). *Id.* at ¶¶ 6 and 13; *see also* Taxpayer's Appellate Brief at 7. Applying the pipeline ratio, Taxpayer allocated $1,448,653 [3] of the gain to Pennsylvania as nonbusiness income. Stipulation at ¶¶ 6 and 13. Based on this allocation, Taxpayer's total 1986 [4] Pennsylvania corporate net income tax assessment would have been $155,109. *Id.* at ¶ 13.

On June 2, 1988, the Pennsylvania Department of Revenue (Department) entered into a settlement with Taxpayer regarding Taxpayer's 1986 Pennsylvania corporate net income tax. *Id.* at ¶ 8. The settlement classified Taxpayer's gain on the sale of the Aliquippa–Cleveland pipeline as business income to be apportioned to Pennsylvania by using the ratio of revenue-barrel miles [5] in Pennsylvania to the total revenue-barrel miles everywhere ("revenue-barrel" ratio). *Id.* at ¶ 9; *see also* subsection 401(3)2.(c) of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S.

sponding equipment and property which were sold as part of Taxpayer's Aliquippa–Cleveland pipeline.

2. As a result of several changes in corporate ownership during the 1986 tax year, Taxpayer's 1986 tax year has been divided for both federal and Pennsylvania income tax purposes into three short taxable years. The taxable year at issue in the present case is solely the period December 1, 1986 through December 22, 1986. Stipulation at ¶ 4.

3. This figure was reached by multiplying the total gain of $3,766,047 by .3846 (*i.e.,* the pipeline ratio of 42.3/110).

4. That is, Taxpayer's total corporate net income tax assessment for the period December 1, 1986 to December 22, 1986.

5. A revenue-barrel mile consists of the receipts derived from the transportation of one barrel of petroleum for one mile. Subsection 401(3)2.(c)(1) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7401(3)2.(c)(1).

§ 7401(3)2.(c).[6] Applying the revenue-barrel ratio, the Department apportioned $3,744,520 of the gain to Pennsylvania as business income.[7] Stipulation at ¶¶ 9 and 12. Based on this apportionment, Taxpayer's total 1986 [8] Pennsylvania corporate net income tax assessment was $373,216. *Id.* at ¶¶ 9 and 12.

Taxpayer timely filed a petition for resettlement with the Department's Board of Appeals which denied the petition. *Id.* at ¶ 10. Taxpayer then timely filed a petition for review with the Board of Finance and Revenue (hereafter, Board) which denied the petition. *Id.* Thereafter, Taxpayer timely filed a petition for review with the commonwealth court. *Id.; see also* Pa.R.A.P. 1571.

On appeal, Taxpayer raises three alternative issues concerning whether all or a portion of the gain from the sale of the Aliquippa–Cleveland pipeline is taxable by the Commonwealth. Taxpayer asks (1) whether the entire gain from the sale of the pipeline falls within the definition of taxable business income at subsection 401(3)2.(a)(1)(A) of the Code,[9] (2) whether the idle Ohio segment of the pipeline constitutes an asset unrelated to Taxpayer's regular Pennsylvania business activities so that the gain from the sale of the Ohio segment of the pipeline is not subject to taxation by the Commonwealth, and (3) whether the commerce and due process clauses of the United States Constitution preclude the Commonwealth from using the revenue-barrel ratio to tax the gain from the sale of the Ohio segment of the pipeline.

## I.

■ Taxpayer argues first that, contrary to the Department's and the Board's determinations, the gain from the sale

6. Taxpayer's 1986 revenue-barrel ratio was 11,176,376 revenue-barrel miles in Pennsylvania divided by 11,240,649 total revenue-barrel miles, i.e., .994284. Stipulation at ¶ 9.

7. This figure was reached by multiplying the total gain of $3,766,047 by .994284 (i.e., the revenue-barrel ratio of 11,176,376/11,240,649).

8. That is, Taxpayer's total corporate net income tax assessment for the period December 1, 1986 to December 22, 1986.

9. 72 P.S. § 7401(3)2.(a)(1)(A).

of its idle Aliquippa–Cleveland pipeline qualifies as nonbusiness income instead of business income. For taxation purposes, the significant distinction between business income and nonbusiness income is that business income of pipeline companies is subject to apportionment[10] whereas nonbusiness income of pipeline companies "is allocated to the situs of the income producing property." *Welded Tube Co. of America v. Commonwealth,* 101 Pa.Commonwealth Ct. 32, 41, 515 A.2d 988, 993 (1986).

Subsection 401(3)2.(a)(1)(A) of the Code states that business income

> means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations.

Subsection 401(3)2.(a)(1)(D) of the Code, 72 P.S. § 7401(3)2.(a)(1)(D), states that nonbusiness income "means all income other than business income."

*Welded Tube Co.* is the seminal Pennsylvania appellate decision which defines business income within the context of subsection 401(3)2.(a)(1)(A) of the Code. In *Welded Tube Co.,* the commonwealth court held that the first and second portions of subsection 401(3)2.(a)(1)(A) express two separate and alternative tests for determining whether a gain qualifies as business income: the transactional test and the functional test.

Pursuant to the transactional test, a "gain is classified as business income if it is derived from transactions in which the taxpayer regularly engages." *Welded Tube Co.,* 101 Pa.Commonwealth Ct. at 42, 515 A.2d at 993. To ascertain whether the gain from a particular transaction should be designated business income, courts consider the frequency and regularity of similar past transactions by the taxpayer and the taxpayer's subsequent use of the gain. *Id.* A gain used for daily or future needs of an ongoing business is deemed

10. Subsection 401(3)2.(c) of the Code, 72 P.S. § 7401(3)2.(c).

business income. *Id.* "[T]he gain accruing from the sale of assets pursuant to business liquidation has been held . . . to be nonbusiness income arising from a transaction of an extraordinary nature outside the regular course of the taxpayer's trade or business." *Id.* at 43, 515 A.2d at 993.

Taxpayer asserts that the gain from the sale of its Aliquippa–Cleveland pipeline does not qualify as business income under the transactional test because the sale was the only such transaction in Taxpayer's thirty-year business history and thus was not a frequently or regularly occurring transaction in the course of Taxpayer's business operations. Additionally, Taxpayer contends that the gain from the sale of the pipeline does not qualify as business income under the transactional test because the sale resulted in a cessation of Taxpayer's business vis-a-vis the Aliquippa–Cleveland pipeline and thus did not occur in the regular course of Taxpayer's business.

The Commonwealth argues that the sale of Taxpayer's Aliquippa–Cleveland pipeline was not a liquidation or cessation of Taxpayer's business because Taxpayer remains an ongoing concern which continues to operate a Philadelphia–Pittsburgh pipeline in Pennsylvania. *See Welded Tube Co.* However, the Commonwealth does not regard the gain from the sale of Taxpayer's Aliquippa–Cleveland pipeline as satisfying the transactional test inasmuch as the sale was a unique transaction for Taxpayer. Commonwealth's Appellate Brief at 5. Because the Commonwealth has not asserted that the gain from the sale of Taxpayer's Aliquippa–Cleveland pipeline qualifies as business income under the transactional test, we shall not rule upon the applicability of the transactional test to the present case.

Nevertheless, the Commonwealth maintains that the gain from the sale of the Aliquippa–Cleveland pipeline qualifies as business income under the alternate and independent functional test. Pursuant to the functional test, a gain is classified as business income if it is derived from tangible and intangible property whose acquisition, management and disposition constitute integral parts of a taxpayer's regular trade or

business. *Welded Tube Co.* To ascertain whether the gain from a particular piece of property should be designated business income, courts consider whether the property produced business income while it was owned by the taxpayer regardless of the extraordinary nature or infrequency of the transaction that resulted in a gain from the property. *Id.*

Taxpayer asserts that the gain from the sale of its Aliquippa–Cleveland pipeline does not qualify as business income under the functional test because, at the time of the sale, the pipeline had been idle for more than three years and therefore was not being operated as an integral part of Taxpayer's regular business, namely, the pipeline transportation of petroleum products.

The Commonwealth contends that the gain from the sale of Taxpayer's Aliquippa–Cleveland pipeline should be classified as business income because the disposition of the pipeline constituted an integral part of Taxpayer's regular business. We agree with the Commonwealth's contention.

The acquisition and management of the Aliquippa–Cleveland pipeline were integral parts of Taxpayer's regular business. Taxpayer operated the Aliquippa–Cleveland pipeline from 1976 to 1983. In its Pennsylvania corporate net income tax filings for that time span, Taxpayer reported net revenues from the operation of the pipeline as business income subject to apportionment. Therefore, the pipeline produced business income while Taxpayer owned it.

Additionally, the Aliquippa–Cleveland pipeline was only one of the pipelines owned and operated by Taxpayer. When the Aliquippa–Cleveland pipeline became unprofitable and was idled in 1983, the sale of the pipeline was necessary to Taxpayer's continued, overall business viability and was thus an integral part of Taxpayer's regular course of business.

Because the pipeline generated business income during Taxpayer's ownership of it and because the disposition of the pipeline was an integral part of Taxpayer's regular course of business, the gain from the sale of the Aliquippa–Cleveland pipeline qualifies as business income. *Id.*

## II.

Citing *Commonwealth v. ACF Industries, Inc.*, 441 Pa. 129, 271 A.2d 273 (1970), Taxpayer argues alternatively that the gain on the sale of the Ohio portion of its Aliquippa–Cleveland pipeline and corresponding assets is not subject to taxation by the Commonwealth because the idleness of the pipeline after 1983 rendered the Ohio segment of the pipeline an asset unrelated to Taxpayer's regular Pennsylvania business activities of transporting petroleum products by pipeline between Philadelphia and Pittsburgh.[11]

■ In *ACF Industries, Inc.*, the Supreme Court of Pennsylvania analyzed the "unrelated asset" exclusion from taxation. The touchstone of the exclusion is that the General Assembly intended to levy a tax only on a tax base fairly representative of a multistate taxpayer's business activities in Pennsylvania; consequently, assets which do not contribute to a multistate taxpayer's business activities in Pennsylvania are excluded from taxation by the Commonwealth. *Id.*

The supreme court has articulated three considerations which help determine whether an asset is unrelated to a multistate taxpayer's business activities in Pennsylvania.

First, if a multistate business enterprise is conducted in a way that one, some or all of the business operations outside Pennsylvania are independent of and do not contribute to the business operations within this State, the [assets] attributable to the outside activity may be excluded.

Second, in applying the foregoing principle to a particular case, we must focus upon the relationship between the Pennsylvania activity and the outside one, not the common relationships between these and the central corporate structure. Only if the impact of the latter on the operating units or activities is so pervasive as to negate any claim that they function independently from each other do we deny exclusion in this context.

**11.** Taxpayer argues only that the *Ohio* segment of its Aliquippa–Cleveland pipeline was an unrelated asset. Taxpayer's Appellate Brief at 29 and 32.

Third, ... the manufacturing, wholesaling and retailing (or manufacturing and selling) activities of a single enterprise are not fit subjects for division and partial exclusion. On the other hand, a truly divisionalized business, conducting disparate activities with each division internally integrated with respect to manufacturing and selling, may well be in a position to make a valid claim for exclusion.

*Id.* at 142–43, 271 A.2d at 280. In short, if an out-of-state business asset does not contribute to·a multistate taxpayer's Pennsylvania business activities, the out-of-state asset is not subject to taxation by the Commonwealth.

Taxpayer asserts that, because its Aliquippa–Cleveland pipeline was idle in 1986, the Ohio segment of the pipeline did not contribute to Taxpayer's 1986 Pennsylvania business activities which, as characterized by Taxpayer, consisted of the transportation of petroleum products by a pipeline between Philadelphia and Pittsburgh. Accordingly, Taxpayer contends that the Ohio segment of the idle Aliquippa–Cleveland pipeline is an unrelated asset excludable from Taxpayer's 1986 Pennsylvania tax base.

The Commonwealth maintains that, in ascertaining whether the entire gain from the sale of the Aliquippa–Cleveland pipeline is taxable by the Commonwealth, Taxpayer improperly relies on the fact that its Aliquippa–Cleveland pipeline was idle in 1986. The Commonwealth argues that, during the period of the pipeline's operation from 1976 to 1983, Taxpayer reported the income from the pipeline on its Pennsylvania corporate net income tax returns as business income and has thus admitted that the Cleveland–Aliquippa pipeline is an asset related to its Pennsylvania business operations. We agree with the Commonwealth's argument.

■ Indisputably, Taxpayer's Aliquippa–Cleveland pipeline was an asset related to Taxpayer's Pennsylvania business activities while the pipeline was in operation. It is apparent that Taxpayer's decisions to idle the pipeline and ultimately to sell the pipeline were made in an effort to strengthen the financial condition of Taxpayer's remaining and ongoing Phila-

delphia–Pittsburgh pipeline operations.[12]   Therefore, in our opinion, neither the fact of the idleness of the Aliquippa–Cleveland pipeline at the time of its sale nor the duration of the idleness of the Aliquippa–Cleveland pipeline prior to its sale transform the pipeline from a related asset to an unrelated asset.  *See Welded Tube Co.* (Pennsylvania can tax the gain from the sale of a multistate taxpayer's Pennsylvania manufacturing facilities which had been idled for a year and a half before their sale).  We hold that the entire gain from the 1986 sale of Taxpayer's Aliquippa–Cleveland pipeline is taxable by the Commonwealth, subject to apportionment, as the gain from the disposition of an asset related to Taxpayer's 1986 Pennsylvania business operations.

## III.

Finally, Taxpayer argues in the alternative that the commerce and due process clauses of the United States Constitution prohibit the Commonwealth's alleged attempt to tax outside its jurisdiction by using the revenue-barrel ratio to apportion to Pennsylvania Taxpayer's gain from the sale of the Ohio segment of the Aliquippa–Cleveland pipeline.  For the following reasons, we reject Taxpayer's argument.

In *C.I. Whitten Transfer Co. v. Department of Revenue,* 34 Pa.Commonwealth Ct. 37, 382 A.2d 1251 (1978), the commonwealth court explained that

> [a]  state tax … does not violate the Commerce Clause if it "is applied to an activity [in interstate commerce] with a substantial nexus with the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279 [97 S.Ct. 1076, 1079, 51 L.Ed.2d 326] (1977)....

*Id.* at 44–45, 382 A.2d at 1254; *accord D.H. Holmes Co. v. McNamara,* 486 U.S. 24, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988); *Mobil Oil Corp. v. Commissioner of Taxes of Vermont,*

---

**12.** Taxpayer idled and later sold its Aliquippa–Cleveland pipeline "due to shifting distribution patterns and insufficient volume." Stipulation of Facts at ¶ 5.

445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980); *Commonwealth v. Universal Carloading and Distributing Co.,* 29 Pa.Commonwealth Ct. 553, 372 A.2d 41 (1977).

Similarly, in *Mobil Oil Corp.* and *Container Corp. of America v. Franchise Tax Board,* 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983), the United States Supreme Court explained that a state tax on income produced in interstate commerce does not violate the due process clause of the United States Constitution if there exists (1) a minimal connection between the taxpayer's interstate business activities and the taxing state plus (2) a rational relationship between the income attributed to the taxing state and the intrastate value of the business enterprise being taxed. In *Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1981); *Mobil Oil Corp.* and *Container Corp. of America,* the Supreme Court equated the first component (nexus to taxing state) of the commerce clause analysis with the first component of the due process clause analysis and equated the second component (tax liability fairly proportionate to taxpayer's activities in taxing state) and the fourth component (tax liability fairly related to services provided by taxing state) of the commerce clause analysis with the second component of the due process clause analysis. We shall follow the Supreme Court's example by concurrently examining Taxpayer's due process and commerce clause claims.

## A.

The Commonwealth asserts, and we agree, that the sale of Taxpayer's Aliquippa–Cleveland pipeline had a substantial nexus with Pennsylvania. Of the 110 miles of pipe in Taxpayer's Aliquippa–Cleveland pipeline, 42.3 miles were located within the boundaries of Pennsylvania. Before the sale of the pipeline, Taxpayer treated the pipeline as a single, indivisible piece of property and paid the Commonwealth taxes on the entire income from the pipeline. Taxpayer sold the pipeline as a single, indivisible piece of property and in its 1986 Pennsylvania corporate net income tax returns, allocated a

portion of the gain to the Commonwealth for the purposes of taxation.

Moreover, Taxpayer had other significant intrastate business connections. *See C.I. Whitten Transfer Co.* Taxpayer's headquarters and principal place of business were and are located in Emmaus, Pennsylvania. Taxpayer operated, and continues to operate, an intrastate pipeline between Philadelphia and Pittsburgh.

### B.

We now consider whether the gain from the pipeline sale ·was fairly apportioned so that the income taxed by the Commonwealth was not beyond appropriate proportions to the intrastate business conducted by Taxpayer. *Container Corp. of America.* Taxpayer contends that the income from the sale of its Aliquippa–Cleveland pipeline was unfairly apportioned to Pennsylvania because the apportionment was calculated according to a single-factor formula (revenue-barrel miles) rather than the three-factor formula (property, payroll, sales) accepted by the Supreme Court in *Container Corp. of America.* We disagree.

In *Container Corp. of America,* the Supreme Court did approve the three-factor apportionment formula, but the Supreme Court also declared that it was not the only acceptable apportionment formula. *Accord Mobil Oil Corp.* Subsections 3401(3)2.(a)(9)–(17) of the Code, 72 P.S. § 7401(3)2.(a)(9)–(17), set forth the three-factor formula (property, payroll, sales) for apportioning to Pennsylvania business income which is taxable both by the Commonwealth and by another state. However, subsections 3401(3)2.(a)(2), 3401(3)2.(b), 3401(3)2.(c), and 3401(3)2.(d) of the Code [13] exclude from the application of the three-factor apportionment formula all business income of railroad, truck, bus or airline companies; [14] all business income of pipeline or natural gas companies, [15] and all business income

---

13. 72 P.S. § 7401(3)2.(a)(2), 7401(3)2.(b), 7401(3)2.(c), and 7401(3)2.(d).

14. Subsection 3401(3)2.(b) of the Code.

15. Subsection 3401(3)2.(c) of the Code.

of water transportation companies.[16]

With respect to pipeline companies, subsection 3401(3)2.(d)(1) provides that apportionment of business income to Pennsylvania must be computed according to the revenue-barrel formula.[17] Taxpayer does not contest the propriety of the revenue-barrel formula for apportioning income from its actual transportation of petroleum products, but Taxpayer theorizes that the revenue-barrel formula is not proper for apportioning income from its sale of a petroleum products pipeline.

■ Taxpayer bears the burden of proving, by clear and cogent evidence, that the income attributed to Pennsylvania under the revenue-barrel apportionment formula is out of all appropriate proportions to the business conducted by Taxpayer in Pennsylvania. *See Container Corp. of America; Mobil Oil Corp.* On two grounds, we conclude that Taxpayer has not satisfied its burden of proof.

■ First, Taxpayer argues that its gain from the sale of the Aliquippa–Cleveland ·pipeline should be apportioned to Pennsylvania under the three-factor formula of subsections 3401(3)2.(a)(9)–(17) of the Code rather than under the single-factor (revenue-barrel) formula of subsection 3401(3)2.(d)(1) of the Code. Taxpayer's Appellate Brief at 37–40. The three-factor formula apportions a taxpayer's business income to Pennsylvania by multiplying the taxpayer's income by a fraction whose numerator is the sum of the property factor, the payroll factor, plus the sales factor and whose denominator is three. 72 P.S. § 7401(3)2.(a)(9). However, in the record before us, Taxpayer has not supplied any data for computing Taxpayer's property, payroll, and sales factors. Therefore, Taxpayer has not demonstrated that the use of the three-

16. Subsection 3401(3)2.(d) of the Code.

17. A taxpayer's business income is apportioned to Pennsylvania by multiplying the taxpayer's income by the revenue-barrel ratio. 72 P.S. § 7401(3)2.(d)(1). As mentioned *supra,* the revenue-barrel ratio consists of a fraction whose numerator is the taxpayer's revenue-barrel miles within Pennsylvania and whose denominator is the taxpayer's total revenue-barrel miles everywhere during the relevant tax period. *Id.*

factor formula would yield a significantly different tax assessment than the use of the single-factor (revenue-barrel) formula.

Furthermore, nothing in the parties' stipulation of facts or in the parties' appellate briefs suggests that Taxpayer availed itself of subsection 3401(3)2.(a)(18) of the Code, 72 P.S. § 7401(3)2.(a)(18), which states in pertinent part:

If the allocation and apportionment provisions of this definition do not fairly represent the extent of the taxpayer's business activity in this State, the taxpayer may petition the Secretary of Revenue ... in respect to all or any part of the taxpayer's business activity [for]:

. . . .

(D) The employment of any other method to effectuate an equitable allocation and apportionment of taxpayer's income.

■ Second, Taxpayer does not cite any cases in support of its proposed theory that the revenue-barrel formula cannot be used to apportion the income from the sale of the Aliquippa–Cleveland pipeline because Taxpayer's income from the pipeline transportation of petroleum products in Pennsylvania should be distinguished from Taxpayer's income from the sale of a petroleum products pipeline. Nor has our research disclosed any controlling precedent.

We perceive no reason to distinguish between income derived from a petroleum products pipeline through the pipeline's current transportation of petroleum products and income derived from a petroleum products pipeline through the sale of the pipeline itself. *See Mobil Oil Corp.* (the Supreme Court rejected a taxpayer's effort to differentiate between the receipt of income from dividends of the taxpayer's overseas affiliates/subsidiaries and the receipt of income from the taxpayer's intrastate sale of petroleum products).

C.

Taxpayer does not contend that the Commonwealth's corporate net income tax discriminates against interstate commerce. Taxpayer's Appellate Brief at 40. Therefore, no additional

discussion of the third component of the commerce clause analysis is warranted in this appeal.

## D.

The benchmark for ascertaining whether a state tax is fairly related to the state's services to the taxpayer was concisely summarized by the Supreme Court in *Commonwealth Edison Co.* as follows: "When a tax is assessed in proportion to a taxpayer's activities or presence in a State, the taxpayer is shouldering its fair share of supporting the State's provision of 'police and fire protection, the benefit of a trained work force, and "advantages of a civilized society...."'" *Id.*, 453 U.S. at 627, 101 S.Ct. at 2958 (citations omitted).

Taxpayer admits that "[a] corporation which operates a pipeline in Pennsylvania obviously enjoys benefits provided by the Commonwealth, such as police and fire protection, a road system, access to state's courts, etc." Taxpayer's Appellate Brief at 40. Nevertheless, Taxpayer argues that the amount of its 1986 Pennsylvania corporate net income tax assessment was "excessive when compared to the taxpayer's privilege of conducting business within the Commonwealth." *Id.* at 40. In characterizing the 1986 Pennsylvania tax assessment as excessive, Taxpayer avers that only 5.2 percent of Taxpayer's income ($207,047)[18] was derived from Taxpayer's intrastate pipeline transportation of petroleum products for the tax period in question, December 1 to December 22, 1986.

The Commonwealth maintains that the 1986 Pennsylvania tax assessment was not excessive inasmuch as 99.44284 percent of Taxpayer's income[19] for the applicable tax period was generated by Taxpayer's Pennsylvania activities. Additionally, the Commonwealth emphasizes that, during the pertinent

18. For the relevant tax period, Taxpayer reported federal taxable income of $3,973,094. Stipulation of Facts at ¶¶ 11–12. Dividing $207,047 by $3,973,094 yields 5.2 percent.

19. This percentage is derived from the revenue-barrel ratio of 11,176,376 revenue-barrel miles in Pennsylvania for the pertinent tax period divided by Taxpayer's total 11,240,649 revenue-barrel miles everywhere for the pertinent tax period.

tax period, Taxpayer's corporate headquarters and principal place of business were situated in Emmaus, Pennsylvania and Taxpayer operated a petroleum products pipeline between Philadelphia and Pittsburgh, Pennsylvania. Given these circumstances, we conclude that Pennsylvania's 1986 corporate net income tax assessment was fairly related to the services which Pennsylvania provided to Taxpayer.

## IV.

Having held that Taxpayer has been unsuccessful in attacking the validity of the Pennsylvania corporate net income tax assessment against it for the short taxable year commencing December 1, 1986 and ending December 22, 1986, we enter the order hereinafter set forth.

## ORDER

AND NOW, August 20, 1992, the order of the Board of Finance and Revenue in the above-captioned case is hereby affirmed. Unless exceptions to this order of the Commonwealth Court of Pennsylvania are filed within 30 days after entry of this order pursuant to Pa.R.A.P. 1571(i), the Chief Clerk of the Commonwealth Court of Pennsylvania is hereby directed to enter judgment in favor of the Commonwealth of Pennsylvania and against Laurel Pipe Line Company at 318 F.R. 1989 in the amount of $373,216 plus interest in accordance with section 403 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7403.