644 A.2d 235

**ROSS–ARACO, CORP., Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1993.

Decided June 14, 1994.

50

52

Daniel J. Dugan, for petitioner.

Kevin A. Moury, Deputy Atty. Gen., for respondent.

Before DOYLE and COLINS, JJ., and DELLA PORTA, Senior Judge.

DELLA PORTA, Senior Judge.

Ross–Araco Corp. (Taxpayer) petitions for review of the decision of the Board of Finance and Review (Board) which refused to classify Taxpayer's gain from the sale of a tract of land as "nonbusiness income" under Section 401(3)2.(a)(1)(D) of the Tax Reform Code of 1971 (Code),[1] for the purpose of calculating Taxpayer's corporate net income tax for the fiscal year ending November 30, 1988.

 An appeal to this Court from the Board's decision is a de novo proceeding. *Doyle Equipment Co. v. Commonwealth,* 117 Pa.Commonwealth Ct. 38, 542 A.2d 644 (1988). The record, therefore, is not certified to this Court by the Board, but is created before this Court. *Id.;* Pa.R.A.P. 1571(f). The parties in this matter have stipulated to the facts relevant to this Court's resolution of the issue by submitting the Stipulation of Facts pursuant to Pa.R.A.P. 1571(f), which constitutes the entire record in this proceeding. The facts stipulated by the parties are binding and conclusive in this proceeding. *PICPA Foundation for Education & Research v. Commonwealth,* 143 Pa.Commonwealth Ct. 291, 598 A.2d 1078 (1991), *aff'd,* 535 Pa. 67, 634 A.2d 187 (1993). Accordingly, we adopt the facts set forth in the Stipulation of Facts as our findings of fact in this matter.

1. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7401(3)2.(a)(1)(D).

Taxpayer is a general and mechanical contractor in the construction business operating within and outside Pennsylvania. Stipulation of Facts, ¶ 3. Taxpayer's principal place of business is located in Plymouth Meeting, Pennsylvania. *Id.* at 1. Taxpayer was formed in 1981 as the result of a merger between Ross Construction Corp.[2] and Araco Co. *Id.* at 2. Taxpayer's construction activities are exclusively on municipal projects on a low bid basis. It does not invest its own funds in the projects. *Id.* at 3.

In 1960, Taxpayer's predecessor purchased a 24.5–acre parcel of land located in Voorhees, New Jersey. Taxpayer intended to use and did use a building on the fenced 3–acre portion of the parcel for storage of the equipment and materials used in its construction business. The remaining 21.5 acres of heavily wooded land (21.5–acre tract) was purchased concurrently with the 3–acre tract. *Id.* at 4. The entire 21.5–acre tract remained unimproved during the ownership of Taxpayer and its predecessors. *Id.* at 5. The cost basis for the purchase of the 21.5–acre tract was $11,099. *Id.* at 17. On April 25, 1988, Taxpayer sold the 21.5–acre tract for $1,439,598 to Radnor–Canuso Partnership, developers unrelated to Taxpayers, and realized gain of $1,428,499. *Id.* at 8, 17. Taxpayer used all of the proceeds from the sale to purchase United States Treasury Notes. *Id.* at 9.

Taxpayer currently owns the remaining 3–acre tract and no other real property. *Id.* at 7. During Taxpayer's ownership, the 21.5–acre tract was carried on Taxpayer's balance sheet at its original cost of $11,099 and was customarily pledged along with Taxpayer's other assets to obtain performance bid bonds from insurance companies. *Id.* at 10. Taxpayer also included the 21.5–acre tract at its original cost value in calculating the property factor for the purposes of the Pennsylvania corporate net income tax, and deducted the real estate taxes paid thereon in arriving at business income apportionable to Pennsylvania. *Id.* at 11–12.

---

**2.** Ross Construction Corp. was originally known as Araco Construction and Realty Co., Inc. from the time of its incorporation in 1957 until 1963. *Id.* at 2.

Taxpayer reported the gain from the sale of the 21.5–acre tract as nonbusiness income allocable to New Jersey in its Pennsylvania corporate tax report for the fiscal year ending November 30, 1988. *Id.* at 18. On October 23, 1990, the Department of Revenue settled Taxpayer's corporate net income tax, reclassifying the gain from nonbusiness income to business income, which increased the amount of Taxpayer's tax from $268,321 to $376,770. After paying the full amount of the tax as settled by the Department, but not the interests imposed thereon, Taxpayer filed a petition for resettlement which the Board of Appeals denied. Taxpayer then filed a petition for review with the Board. After the Board denied the petition, Taxpayer timely filed a petition for review with this Court. *Id.* at 19–22.

On appeal from the Board's decision, the burden of proof is on the taxpayer. Section 236 of the Code, 72 P.S. § 7236; *Doyle Equipment.* The sole issue to be decided by this Court is whether Taxpayer's gain from the sale of the 21.5–acre tract is business income or nonbusiness income under Section 401(3)2.(a)(1) of the Code. Stipulation of Facts, ¶ 23. The Code defines "business income" as:

[I]ncome arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations.

Section 401(3)2.(a)(1)(A) of the Code. "Nonbusiness income" is defined as "all income other than business income." Section 401(3)2.(a)(1)(D) of the Code.

■ The Code establishes a system of allocation and apportionment in determining the net income of corporations engaged in taxable activities within and outside Pennsylvania. *SmithKline Beckman Corp. v. Commonwealth,* 85 Pa.Commonwealth Ct. 437, 482 A.2d 1344 (1984), *aff'd,* 508 Pa. 359, 498 A.2d 374 (1985). Under this system, business income is subject to apportionment between and among states pursuant to an apportionment formula set forth in Section

401(3)2.(a)(9).[3] Nonbusiness income is allocated to the situs of the income-producing property. *Laurel Pipe Line Co. v. Commonwealth,* 537 Pa. 205, 642 A.2d 472 (1994).

In *Welded Tube Co. of America v. Commonwealth,* 101 Pa.Commonwealth Ct. 32, 515 A.2d 988 (1986), this Court adopted two separate and alternative tests for determining whether certain income is business income or nonbusiness income under Section 401(3)2.(a)(1) of the Code for the purpose of computing the Pennsylvania corporate net income tax: the transactional test and the functional test.

The first part of Section 401(3)2.(a)(1)(A) sets forth the transactional test under which a "gain is classified as business income if it is derived from transactions in which the taxpayer regularly engages." *Id.* at 42, 515 A.2d at 993. Under this test, this Court considers the frequency and regularity of the taxpayer's past business practice of similar transactions in determining whether the gain from a particular transaction should be classified as business income. *Id.* The taxpayer's subsequent use of the gain from the transaction is also relevant in the determination. *Id.* Thus, a gain used for on-going or future business operations is considered business income. *Id.* However, the gain from the sale of assets pursuant to business liquidation is nonbusiness income because it is income from "a transaction of an extraordinary nature outside the regular course of the taxpayer's trade or business." *Welded Tube,* 101 Pa.Commonwealth Ct. at 43, 515 A.2d at 993. Taxpayer contends that the gain from the sale of the 21.5–acre tract constitutes nonbusiness income under the transactional test because it was not derived from the transaction in which it regularly engaged.

Taxpayer currently owns the 3–acre tract and no other real property. Stipulation of Facts, ¶ 7. The only other real property previously owned by Taxpayer is the property at the location of its former offices in Philadelphia, which was pur-

**3.** Section 401(3)2.(a)(9) of the Code provides: "All business income shall be apportioned to this State by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three."

chased by its predecessor before 1960 and sold by Taxpayer in 1983 for approximately $8,000. *Id.* Thus, the sale of the 21.5–acre tract was only the second disposition of real property in the 31–year corporate history of Taxpayer and its predecessors. Therefore, when the sale of the 21.5–acre tract is measured against the frequency and regularity of Taxpayer's past practice of similar real estate transactions, the gain realized by Taxpayer was not derived from the transactions in which taxpayer regularly engaged.[4]

The Commonwealth nonetheless contends that although Taxpayer was not extensively engaged in real estate transactions, the 21.5–acre tract was held for investment purposes, and the gain from its sale therefore is business income deriving from the regular course of its occasional or subordinate investment business. In so arguing, the Commonwealth misconceives the proper application of the transactional test. Under the transactional test, this Court compares the transaction in question with *similar* transactions of taxpayer's past business practice, *i.e.*, the real estate transactions, to ascertain their frequency and regularity. Although Taxpayer was engaged in substantial investment activities, the Commonwealth failed to point to any evidence indicating that the 21.5–acre was directly or indirectly involved in Taxpayer's investment activities and produced investment income before it was sold in 1988.

Moreover, the Commonwealth's reliance upon *Welded Tube* is misplaced. In *Welded Tube*, the taxpayer's principal business was manufacturing and sale of welded steel tubing. The taxpayer sold the manufacturing facility, machinery and equip-

---

**4.** The Commonwealth also relies upon the statement of the proposed business activities contained in the application for a certificate of authority to do business in Pennsylvania, filed in 1958 by Taxpayer's predecessor, Araco Construction and Realty Company, Inc.: "construction and building, buying, selling and holding real estate." However, the relevant consideration under the transactional test is the frequency and regularity of the similar transactions in which Taxpayer was *actually* engaged in the past practice of the business. *Welded Tube.* Since Taxpayer was not actually engaged in the real estate transactions in the regular course of his business, the Commonwealth's reliance upon the proposed business activities is misplaced.

ment located in Philadelphia as part of the reorganization of its business operations. The taxpayer realized the gain from the sale and used it in extinguishing the existing debts and expanding the other manufacturing facility located in Chicago. The record also showed that over the previous five-year period, the taxpayer purchased thirteen parcels of land contiguous to its facility, acquired thirty-five acres of land outside Pennsylvania as a prospective site for a new manufacturing facility, and regularly bought and sold machinery and equipment to keep up with advances in technology and changing market demands. This Court concluded that while the principal business of the taxpayer was manufacturing, the gain realized from the disposition of the property constituted business income derived from the regular practice of acquiring the property for the purpose of expanding the business.

In the matter *sub judice*, however, Taxpayer was not engaged in the similar transactions of buying and selling real property in the regular course of business. Therefore, the sale of the tract was a transaction of "an extraordinary nature outside the regular course of its trade or business." *Welded Tube*, 101 Pa.Commonwealth Court at 43, 515 A.2d at 993. Moreover, Taxpayer used the proceeds from the sale of the 21.5–acre tract to buy United States Treasury Notes and for no other purposes. Taxpayer did not use the proceeds for its ongoing or future business operations as in *Welded Tube.*

If we adopt the interpretation of the transactional test urged by the Commonwealth, gain from the sale of any assets owned by the taxpayer would be deemed business income, as long as the taxpayer is engaged in the secondary investment activities, even though the property in question was not directly involved in such activities during the taxpayer's ownership. Such broad interpretation of the definition of business income under Section 401(3)2.(a)(1)(A) would be against the well-established statutory construction principle that provisions of a statute imposing taxes must be strictly construed. Section 1928(b)(3) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928(b)(3). We conclude that the gain realized by Taxpayer was nonbusiness income under the transactional test.

58

■■■ The second part of Section 401(3)2.(a)(1)(A) sets forth the alternative and independent functional test under which a gain is classified as business income if it is derived from tangible and intangible property whose acquisition, management and disposition constitute integral part of the taxpayer's regular trade or business. Under this test, the gain arising from the sale of an asset is classified as business income if the property produced business income during the taxpayer's ownership, regardless of the extraordinary nature or infrequency of the transaction. *Welded Tube.* In the matter *sub judice,* acquisition, management and disposition of real property were not integral parts of Taxpayer's regular trade or business. Stipulation of Fact, ¶ 7. Further, the 21.5–acre tract did not produce any income during Taxpayer's ownership. *Id.* at 5–6.

Further, the Commonwealth's reliance upon this Court's decisions in *Welded Tube* and *Laurel Pipe Line* is misplaced. In *Welded Tube,* it was the taxpayer's regular practice to acquire property to expand its business operations. Further, the gain was from the sale of the manufacturing facility, machinery and equipment which produced business income. In *Laurel Pipe Line,* the taxpayer's business was transporting petroleum products through the pipelines to various points. The gain in question was from the sale of one of the pipelines which had been idle for over three years. This Court concluded that the gain was business income under the functional test because the single disposition of an unprofitable pipeline was necessary to the taxpayer's continued, overall business viability, and therefore an integral part of the regular business. The Supreme Court has recently reversed this Court's *Laurel Pipe Line* decision, concluding: "In our view, the pipeline was not disposed of as an integral part of Laurel's regular trade or business. Rather, the effect of the sale was that the company liquidated a portion of its assets." 537 Pa. at 211, 642 A.2d at 475. As in *Laurel Pipe Line,* the disposition of the 21.5–acre constituted "a separate and distinct aspect of [Taxpayer's] business," 537 Pa. at 211, 642 A.2d at 475, not an integral part of the regular course of the trade or business.

The Commonwealth further contends that the 21.5–acre tract was an integral part of Taxpayer's construction business and also produced business income because it was listed at the original cost of $11,099 among Taxpayer's assets on its balance sheet which were pledged to obtain performance bid bonds from insurance companies. Stipulation of Facts, ¶ 10. Between 1984 and 1989, taxpayer's total assets ranged from $4,193,531 to $15,370,682. *Id.* at 13. Thus, the value of the tract carried on the Taxpayer's balance sheet was insignificant, when compared with the total amount of Taxpayer's assets. We conclude, therefore, that the use of the tract for the purpose of obtaining performance bid bonds should not make any difference. Rather, the controlling factor under the functional test is whether the property directly produced business income during the ownership as in *Welded Tube.* Consequently, we conclude that Taxpayer's gain was nonbusiness income under the functional test.[5]

Having concluded that Taxpayer's gain from the sale of the 21.5–acre tract is nonbusiness income, Taxpayer's corporate net income tax for the fiscal year ending November 30, 1988 is calculated as follows, pursuant to Stipulation of Fact, ¶ 25:

5. Taxpayer contends that its gain is nonbusiness income under the Department of Revenue's regulation at 61 Pa.Code § 153.24, in effect at the time of this proceeding. Section 153.24 was amended on January 17, 1987 to delete the examples of nonbusiness income inconsistent with the *Welded Tube* decision. 17 Pa. Bulletin 273 (1987). Section 153.24(d)(2) provided in relevant part that "[a]s a general rule, gain or loss from the sale ... or other disposition of real ... property is classifiable as business income if such sale ... constitutes an activity in the regular course of a trade or business of the taxpayer." The Section contained Example 2 which provided that where the taxpayer acquires an office building, occupying part of the building as the corporate headquarters and renting the rest to a tenant under a long-term lease, the gain or loss from the sale of the building is classifiable as nonbusiness income if the taxpayer is not in a secondary real estate trade or business.

The above-quoted regulation was repealed in April 1992 subsequent to Taxpayer's filing of the petition for review with this Court. The Commonwealth does not dispute that the repealed regulation was applicable to this matter. The Commonwealth contends, however, that Section 153.24(d)(2) is inconsistent with *Welded Tube.* Without reaching the question of whether Section 153.24(d)(2) is inconsistent with *Welded Tube,* we simply note that Taxpayer's income is nonbusiness income under the *Welded Tube* holding.

| | | |
|---|---|---|
| Income to be apportioned | $ | 3,899,846 |
| Revised apportionment factor [6] | × | .848726 |
| Pennsylvania taxable income | $ | 3,309,901 |
| Tax rate | × | 8.5% |
| TOTAL TAX DUE | $ | 281,342 |

Accordingly, we reverse the order of the Board and enter judgment in favor of the Commonwealth and against Taxpayer in the amount of $281,342, plus statutory interest.

## *ORDER*

AND NOW, this 14th day of June, 1994, the decision of the Board of Finance and Revenue in the above-captioned matter is hereby reversed. If no exceptions are filed within thirty days after entry of this order pursuant to Pa.R.A.P. 1571(i), the Chief Clerk of the Court shall enter judgment in favor of the Commonwealth of Pennsylvania and against Ross–Araco Corp. in the amount of $281,342, plus statutory interest on the late payment of any taxes. The Department of Revenue is directed to refund any overpaid taxes plus statutory interest thereon.

---

6. The apportionment factor is revised because the gross proceeds from the sale of the 21.5–acre tract are removed from the sales factor denominator pursuant to Section 401(3)2.(a)(1)(E) of the Code. Stipulation of Facts, ¶ 25.