543 P.2d 489

**McVEAN & BARLOW, INC., Appellant,**

v.

**NEW MEXICO BUREAU OF REVENUE,**
Appellee.

No. 1794.

Court of Appeals of New Mexico.

Oct. 28, 1975.

Rehearing Denied Nov. 7, 1975.

Certiorari Denied Dec. 11, 1975.

Seth D. Montgomery, Montgomery, Federici, Andrews, Hannahs & Buell, Santa Fe, for appellant.

Toney Anaya, Atty. Gen., Daniel H. Friedman, Asst. Atty. Gen., Santa Fe, for appellee.

## 522

## OPINION

HENDLEY, Judge.

Taxpayer appeals the order and decision of the Commissioner of Revenue assessing a deficiency on taxpayer's corporate income tax for 1973. We reverse.

The question to be decided by this case is the meaning to be given to the term "business income" as it is used in the Uniform Division of Income for Tax Purposes Act (UDITPA) § 72–15A–16 to § 72–15A–36, N.M.S.A.1953 (2d Repl.Vol. 10, pt. 2, Supp.1973).

Section 72–15A–17(A), supra, provides:

" * * * 'Business income' means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations."

Taxpayer is a foreign corporation engaged in the business of laying pipelines. Their pipeline work was of two varieties. One type, pursued for about twenty-five years prior to the transaction in question, involved the laying of small diameter pipelines (little-inch work). The other type, pursued for four or five years before the transaction in question, involved the laying of large diameter pipelines (big-inch work).

In 1973 the corporation experienced a major re-organization, with the principal shareholder selling out to three management employees. This transaction was partially accomplished by the liquidation of the big-inch pipeline business. The pipeline equipment was sold by auction in Texas and Nevada. Taxpayer, viewing the income derived from the sale as nonbusiness income, decided that UDITPA provided for allocation of that income either to Nevada or Texas, under § 72–15A–22, supra.

The Commissioner in his decision and order found that:

"4. Taxpayer testified that he regularly bought and/or sold as much as five hundred thousand dollars worth of equipment annually, of the types the receipts of which are taxed in the instant assessment. The acquisition, management, and disposition of this equipment constituted an integral part of the taxpayer's regular trade or business. In addition, said equipment was used by taxpayer to produce business income and was so utilized until the time said equipment was sold. Therefore, the receipts from the sale of this equipment was business income within the meaning of § 72–15A–17(A), N.M.S.A.1953."

■ The Commissioner's factual view of taxpayer's testimony regarding the buying and selling of equipment is taken out of context and does not properly characterize the nature of taxpayer's transactions. As we stated in *Payne v. Tuozzoli*, 80 N.M. 214, 453 P.2d 384 (Ct.App.1969):

"In resolving conflicts in the evidence in support of the findings, it is not contemplated, nor is it consistent with reason, that words, phrases, clauses or sentences may be selected out of context and then combined to give support for a conclusion which is not supportable by the entire text of the testimony of the witnesses on the particular subject or subjects from which the selections are taken."

Taxpayer did testify that he regularly bought and/or sold as much as five hundred thousand dollars worth of equipment annually. However, this buying and selling of equipment was done in the course of replacing used or scrapped equipment used in the business with new. Taxpayer testified that " * * * [w]e have ditching machines and loading back hoes * * * and we want to trade one in for another, or scrap one and buy a new piece of equipment * * *."

We agree with the Bureau that § 72–15A–17(A), supra, can be broken down

into two parts, each with distinct meanings; (1) "* * * transactions and activity in the regular course of the taxpayer's trade or business * * *" and (2) situations in which "* * * the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations * * *." In his decision, the Commissioner relies on the second part of this section.

One of the few cases construing this section of the Act is *Western Natural Gas Company v. McDonald,* 202 Kan. 98, 446 P.2d 781 (1968). (However, see W. J. Voit Rubber Co., C.C.H. State Tax Cas. Rep. para. 202–435 (Cal.Bd. of Equalization 1964)). In that case the taxpayer was an oil company engaged in various facets of petroleum resource development. It owned a substantial number of oil and gas leases in Kansas. These leases were held for exploration and development and not for resale. In fact, the company had not sold any of their leases from 1947, the time it began operations in Kansas, until 1963, when the company underwent a total liquidation. The income tax return of the company for 1963 excluded gains attributable to the sale of the oil and gas leases. The court in deciding that the income realized by Western Natural Gas Company on the sale of the leases was not business income under UDITPA stated:

"* * * To constitute business income it must arise from transactions and activity in the regular course of a trade or business. Business income includes income from intangible property if the acquisition, management and disposition giving rise to the income constitute integral parts of the regular trade or business operations. It is not the use of the property in the business which is the determining factor under the statute. *The controlling factor by which the statute identifies business income is the nature of the particular transaction giving rise to the income.* To be business income the transaction and activity must have been in the *regular course* of taxpayer's business operations." [Emphasis Added].

The court went on to hold that:

"The present sale of leases cannot be considered made in the regular course of business operations. This sale by Western included all of its assets. A complete plan of liquidation was carried out requiring the affirmative vote of its stockholders. The sale was not made in the regular course of taxpayer's business operations when measured by its former practices. It had not sold oil and gas leases. The sale contemplated cessation rather than operation of the business."

*Western Natural Gas Company v. McDonald,* supra, is distinguished from *Sperry and Hutchinson Co. v. Department of Revenue,* Or., 527 P.2d 729 (1974). In *Sperry and Hutchinson Co. v. Department of Revenue,* supra, the court considered whether investment income received by the taxpayer company, which had as its primary business the sale of trading stamp promotional services to retailers, was business income. The court in deciding this case under the first part of the statute held that the interest paid on the short term securities held to satisfy the needs for liquid capital in the stamp business was business income:

"The short-term securities held to satisfy the needs for liquid capital in the stamp business are apportionable. These securities are purchased during periods of cash flow surplus and are liquidated when the proceeds, both interest and capital, are needed to meet business obligations during periods of cash flow deficit. Thus, this is business income 'arising from transactions and activity in the regular course of the taxpayer's trade or business' and is part of S & H's unitary business."

Thus, the court in *Sperry and Hutchinson Co. v. Department of Revenue,* supra, decided that taxpayer had expanded its business to include investment in short term securities and that it regularly engaged in the activity.

The foregoing cannot be said of taxpayer. Taxpayer testified that this partial liquidation transaction in question was " * * * a very unusual transaction; one that would only happen to a company once in its entire history * * *" and " * * * it changed the basic nature of our business; it changed the geographical environment of where our business could operate in * * *." Thus, we fail to see how the acquisition, management and disposition of the property constituted integral parts of the taxpayer's regular trade or business.

We agree with the court's decision in *Western Natural Gas Company v. McDonald,* supra. In the present case, taxpayer was not in the business of buying and selling pipeline equipment and, in fact, the transaction in question was a partial liquidation of taxpayer's business and a total liquidation of taxpayer's big inch business. The sale of equipment did not constitute an integral part of the regular trade or business operations of taxpayer. This sale contemplated a cessation of taxpayer's big inch business.

Accordingly, we reverse the decision and order of the Commissioner.

It is so ordered.

HERNANDEZ, J., concurs.

LOPEZ, J., dissents.

LOPEZ, Judge (dissenting).

I dissent.

The majority's opinion rests on the rationale that this was an unusual transaction for the taxpayer. I do not think that the question of novelty has anything to do with the question of whether the property sold formed an integral part of the taxpayer's business.

The taxpayer presented his appeal by two alternative modes of argument. The first was the proposition that the sale of property that was "equipment" to the taxpayer (not held for the purpose of sale) could never result in business income. The majority rejects this thesis, apparently on the basis that if equipment were sold with regularity, the proceeds would constitute business income. The taxpayer's second theory, which met with approval by the court, was that this particular sale produced business income because it was extraordinary, both in its size and in that it ended the taxpayer's involvement in big-inch work.

The "unusual" criterion established by the majority lacks support in case law and the statute. I submit that the issue is whether the property was used to produce business income—that is, whether it formed, in its "acquisition, management, and disposition" part of the taxpayer's business.

*Sperry and Hutchinson Co. v. Department of Revenue,* supra, is helpful in elucidating this test. The issue there was whether various types of investment income were business income of a trading stamp company. The court held, with respect to two of the types of investments, that the taxpayer was engaged in the separate business of making investments and that income from these investments was business income of this separate business. With regard to other investments held for us in the stamp business, the court did not find that this income came from a separate business of the taxpayer's, but rather found the contrary—that the investments were held as part of the stamp business and the interest was therefore business income.

*Sperry and Hutchinson* supplies the framework with which we should look at sales of equipment. The issue is not how frequent the sales are, nor how substantial the income from them may be, but rather what the relationship of the property sold is to the business.

*Western Natural Gas Company v. McDonald,* supra, is not to the contrary. This case may be understood as being concerned with the meaning of "disposition"; in the peculiar context of a liquidation there is no

business which the sale of the property can benefit. The "partial liquidation" involved in our case is not encompassed by this rationale because there was an ongoing business after the sale. The Commissioner found that, "[t]axpayer was a single entity engaging in two related types of a single activity." The evidence supporting this finding included the common management, purchasing, accounting, payroll, record-keeping, and supervision of the two activities. See, *Butler Brothers v. McColgan*, 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991 (1942). This evidence is not affected by the corporate reorganization because the taxpayer stipulated at the hearing below that it was the same entity before the reorganization as after. The "partial liquidation" raised by the taxpayer is no different in this context than if the taxpayer had sold half their big-inch and half their little-inch equipment.

Finally, the statute itself negates any requirement that the transaction must be regular to produce business income. The statement in *Western Natural* that the "transaction and activity must have been in the regular course of taxpayer's business operations" I consider to be a critically inaccurate paraphrase of the statutory requirement that the transaction involving the property be "an integral part of the taxpayer's regular trade or business". By pulling income from tangible and intangible property into business income, the legislature has shown its intent to include more than income from inventory within the term. Once it is conceded that noninventory items are to be included, the frequency and regularity with which a business produces income from these collateral sources is irrelevant.

Under the test of whether the equipment's use and sale benefited the taxpayer, it is clear that these proceeds were business income. The taxpayer had used this equipment in his business. It sold the equipment for a business purpose, which was to enable it to maintain the corpora-

tion after the withdrawal of the principal shareholder. The income it received should have been included in the income which was apportioned as business income.