674 A.2d 691

**ROSS–ARACO CORPORATION, Appellee,**

v.

**COMMONWEALTH of Pennsylvania, BOARD OF FINANCE AND REVENUE, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 6, 1995.

Decided April 18, 1996.

Kevin A. Moury, Harrisburg, for Commonwealth.

Daniel J. Dugan, Philadelphia, for Ross–Araco.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY and CASTILLE, JJ.

## OPINION

ZAPPALA, Justice.

The issue presented in this direct appeal is whether the corporate taxpayer's gain from the sale of a 21.5 acre tract of land was business income for the purpose of calculating its corporate net income tax for the fiscal year ending November 30, 1988. The Board of Finance and Revenue determined that the gain was business income under § 401(3)2.(a)(1) of the Tax Reform Code of 1971 (Code), 72 P.S. § 7401(3)2.(a)(1). The Commonwealth Court reversed based on its conclusion that the gain from the sale was nonbusiness income. We granted oral argument on this matter and now affirm.

Ross–Araco Corporation filed a petition for review of the decision of the Board of Finance and Revenue (Board) with the Commonwealth Court. The parties submitted a stipulation of facts pursuant to Pa.R.A.P. 1571(f) which constituted the entire record of the proceeding. As stipulated, Ross–Araco was formed in November 1981 following a merger of Ross Construction Corporation ("Ross") and Araco Company ("Araco"). Ross was originally known as Araco Construction and Realty Co., Inc. from the time of its incorporation in New Jersey on December 16, 1957, until March 5, 1963. Both Ross and Araco applied for and were granted certificates of authority to do business in Pennsylvania in 1958.[1]

Ross–Araco is a general and mechanical contractor in the construction business that operates in and outside of Pennsylvania. Its construction activities are exclusively on municipal projects on a low-bid basis. Ross–Araco does not invest its own funds in the projects on which it works.

---

1. In its application for a certificate of authority, Araco Construction and Realty Co., Inc. identified the character and nature of its business as "construction and building, buying, selling & holding real estate." The application of Araco identified its business as "construction and building of any and all types, and in all its phases."

In 1960, prior to the merger, Ross–Araco's predecessor purchased a 24.5 acre parcel of land located in Voorhees, New Jersey. Ross–Araco used a building which was located on a fenced three-acre portion of the property for storage of the equipment and materials used in its construction business. The remaining 21.5 acres of land were heavily wooded and were unimproved during Ross–Araco's ownership. The 21.5 acre tract was never rented during the time that Ross–Araco owned the land; nor did the tract ever produce royalty income.

As a general contractor, Ross–Araco must obtain performance bid bonds from insurance companies in order to obtain bids on municipal projects. Ross–Araco customarily pledges the assets on its balance sheet to the insurance company that provides the performance bid bonds. The 21.5 acre tract was carried on the balance sheet at its original cost of $11,099 and was consistently pledged for the purpose of obtaining bid bonds. Ross–Araco also included the tract at its original cost value in calculating the property factor for the purposes of the Pennsylvania corporate net income tax and deducted the real estate taxes paid thereon in arriving at business income apportionable to Pennsylvania.

On April 25, 1988, Ross–Araco sold the 21.5 acre tract to an unrelated developer, Radnor–Canuso Partnership, for $1,439,-598. The gross proceeds from the sale less the cost basis of $11,099 resulted in a net gain of $1,428,499. All of the proceeds from the sale were used to purchase United States Treasury Notes.

Ross–Araco currently owns the remaining three acre tract, but no other real property. The only other piece of real property ever owned by Ross–Araco was the site of offices formerly located in Philadelphia. The property was purchased prior to 1960 and sold in 1983.

On its Pennsylvania corporate tax report for the fiscal year ending November 30, 1988, Ross–Araco reported the gain from the sale of the 21.5 acre tract as nonbusiness income allocable to New Jersey. On October 23, 1990, the Depart-

ment of Revenue settled Ross–Araco's corporate net income tax, reclassifying the gain from nonbusiness income as business income. This resulted in an increase in the amount of tax owed from $268,321 to $376,770. Ross–Araco paid the principal amount of the tax as settled by the Department of Revenue, but not the interest assessed thereon. Ross–Araco filed a petition for resettlement that the Board of Appeals denied and then filed a petition for review with the Board of Finance and Revenue that was denied also.

A petition for review was then filed with the Commonwealth Court. The court determined that the gain was nonbusiness income under § 401(3)2.(a)(1)(D) of the Code, 72 P.S. § 7401(3)2.(a)(1)(D) because it was not derived from the transactions in which Ross–Araco regularly engaged. The court concluded that the sale of the property was a transaction of "an extraordinary nature outside the regular course of its trade or business." *Ross–Araco Corporation v. Commonwealth of Pennsylvania*, 165 Pa.Cmwlth. 49, 644 A.2d 235, 238 (1994) (citation omitted).

The court reversed the decision of the Board of Finance and Revenue and directed that, unless exceptions were filed, judgment be entered in favor of the Commonwealth in the lesser amount of tax of $281,342 plus statutory interest on the late payment of taxes. The Department of Revenue was directed to refund any overpaid taxes plus statutory interest thereon. The Board of Finance and Revenue filed exceptions which were overruled.

For purposes of determining corporate net income tax, "business income" is defined in the Code as

income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations.

72 P.S. § 7401(3)2.(a)(1)(A). "Nonbusiness income" includes all income other than business income. 72 P.S. § 7401(3)2.(a)(1)(D).

In *Welded Tube Co. of America v. Commonwealth,* 101 Pa.Cmwlth. 32, 515 A.2d 988 (1986), the Commonwealth Court determined that the statutory definition of business income contained two alternative and independent tests for determining whether income is properly classified as business or nonbusiness income: the transactional test and the functional test.

■ The transactional test is derived from the first clause of the definition of business income. Under the transactional test, gain is classified as business income if it is derived from transactions in which the taxpayer regularly engages. The transactional test measures the particular transaction against the frequency and regularity of similar transactions in the past practices of the business. The taxpayer's subsequent use of the income is also relevant in determining whether gain is business income. *Id.,* 101 Pa.Cmwlth. at 43, 515 A.2d at 993.

■ Under the functional test, which is based upon the second clause of the statutory definition, income is business income if the gain arises from the sale of an asset that produced business income while it was owned by the taxpayer. The extraordinary nature or infrequency of the transaction is irrelevant for purposes of the functional test. *Id.,* 101 Pa. Cmwlth. at 43, 515 A.2d at 994.

In *Welded Tube,* the taxpayer was a corporation engaged in the manufacture and sale of welded steel tubing. The taxpayer owned two manufacturing facilities, one located in Philadelphia and one located in Chicago, Illinois. The Philadelphia manufacturing facility, machinery and equipment were eventually sold for a taxable gain of $2,111,543. On its corporate net income tax return, the taxpayer reported business income to be apportioned as $7,838,962, including the taxable gain of $2,111,543, and nonbusiness income of $274,418. The taxpayer computed the net income tax due at $73,807. The Department of Revenue and the Department of the Auditor General settled

the taxpayer's net income tax by finding business income to be apportioned of $6,001,837 and nonbusiness income of $2,111,543. This resulted in an increase in the corporate net income tax determined to be $264,501.85.

The taxpayer's petition for resettlement was refused by the Board of Appeals. On petition for review, the Board of Finance and Revenue rejected the taxpayer's claim that the gain on the sale of the Philadelphia manufacturing facility, machinery and equipment was business income. The corporate net income tax was reduced to $251,886.85 on resettlement, however.

The taxpayer filed a petition for review with the Commonwealth Court limited to the issue of the proper classification of the gain from the sale. The court concluded that the Board of Finance and Revenue had improperly found the capital gains to be nonbusiness income under either the transactional or functional test.

The record discloses that the taxpayer purchased the Philadelphia property, site of its manufacturing facility, in 1957 and then purchased thirteen additional contiguous parcels of land totaling some twelve acres between 1958 to 1963 for the expansion of this plant. In 1974, the taxpayer also acquired thirty-five acres of land in Alabama as a prospective site of a new manufacturing facility, ultimately never constructed. The taxpayer sold the Philadelphia facility in 1977 when it became unprofitable and sold the Alabama property in 1982, after the tax years in question here.

The Board argues that the taxpayer was not regularly engaged in the buying and selling of manufacturing plants and the disposition of real property only twice over the course of a thirty year corporate history cannot constitute a "systematic and recurrent" business practice so as to satisfy the test formulated in *Atlantic Richfield* indicative of business income.

In our view, the narrow interpretation proposed by the Board is not supported by the wording of the statute. The

statute makes no reference to transactions and activity in the regular course of the taxpayer's *principal* business. As we read the statute, and we do so mindful of 1 Pa.C.S.A. § 1928 providing that statutes imposing taxes are to be narrowly construed, it makes no difference whether income derives from the main business, the occasional business or the subordinate business so long as the income arises in the regular course of business.

While the principal business of the taxpayer comprised the manufacture of welded tube, it was a regular practice of this taxpayer to acquire property in the expansion of its business. We conclude that such property constituted an integral part of its business operations and that its disposition generated business income.

101 Pa.Cmwlth. at 44–45, 515 A.2d at 994 (emphasis supplied).

The court also emphasized the fact that the gain from the sale was invested in the ongoing operations of the business and that the record did not indicate that the closing of the Philadelphia facility contemplated a cessation of the taxpayer's operations. The proceeds from the sale were used by the taxpayer to extinguish existing debts and to expand the Chicago facility.

In *Laurel Pipe Line v. Commonwealth*, 537 Pa. 205, 642 A.2d 472 (1994), we adopted the transactional and functional tests used by the Commonwealth Court in *Welded Tube*. Laurel Pipe Line Company (Laurel) was an Ohio corporation engaged in the business of transporting refined petroleum products from refinery and pipeline connections within Pennsylvania. Laurel also operated a pipeline between points in Pennsylvania and Ohio. In 1986, Laurel discontinued the interstate pipeline operation and sold that particular pipeline for a gain of over three million dollars. Fifteen days after the sale, Laurel's Board of Directors declared dividends equal to the after-tax net proceeds from the sale and distributed the proceeds to Laurel's stockholders. None of the proceeds were used by Laurel to acquire any asset for use in future business operations or to generate income for use in future business operations.

Laurel treated the gain from the sale of the pipeline as nonbusiness income when it filed its 1986 Pennsylvania corporate net income tax return. The Department of Revenue entered into a settlement with Laurel whereby the entire gain was reclassified as business income subject to apportionment between Pennsylvania and Ohio based upon the ratio of the length of pipeline located in Pennsylvania to the total length of pipeline. Laurel filed a Petition for Resettlement with the Board of Appeals that was denied. The Board of Finance and Revenue and the Commonwealth Court denied subsequent petitions for review.

On appeal before this Court, Laurel argued that the sale of the pipeline was nonbusiness income which should be allocated between Pennsylvania and Ohio based upon the situs of the property. We concluded that the gain on the pipeline sale was nonbusiness income.

In making the determination that the gain from the sale of the Aliquippa–Cleveland pipeline is nonbusiness income, we are persuaded by the disposition of a factually similar case in another jurisdiction involving a company in the business of laying pipelines. In *McVean & Barlow, Inc. v. New Mexico Bureau of Revenue*, 88 N.M. 521, 543 P.2d 489 (N.M.Ct.App.), *cert. denied*, 89 N.M. 6, 546 P.2d 71 (1975), the court held that the Commissioner of Revenue erred when he reclassified income derived from an equipment liquidation sale as business income. The company was engaged in pipeline work of two types: one type involved laying small diameter pipelines and the other involved laying large diameter pipelines. In 1973, the company experienced a reorganization which was accomplished in part by the liquidation of the large diameter pipeline business. The related equipment was sold at auction in Texas and Nevada. The gain on the sale was classified by the company as nonbusiness income to be allocated to Texas and Nevada.

The New Mexico Court of Appeals agreed that the gain on the sale of the large diameter pipeline equipment constituted nonbusiness income. By interpreting statutory definitions of business and nonbusiness income identical to those

of Pennsylvania, the court "fail[ed] to see how the acquisition, management and disposition of the property constituted integral parts of the taxpayer's regular trade or business." 88 N.M. at 524, 543 P.2d at 492. The court reasoned that the "taxpayer was not in the business of buying and selling pipeline equipment and, in fact, the transaction in question was a partial liquidation of taxpayer's business and a total liquidation of taxpayer's [large diameter pipeline] business. . . . This sale contemplated a cessation of taxpayer's [large diameter pipeline] business." *Id.*

Although Laurel, in the case at bar, continued to operate a separate, independent pipeline, the sale of the Aliquippa–Cleveland pipeline and distribution of the resultant gain constituted a liquidation of a separate aspect of Laurel's business. Laurel sold one of its two major assets and consequently divested itself from the pipeline business in the Aliquippa–Cleveland geographical region. While not a complete liquidation, the sale of the pipeline was a liquidation of a separate and distinct aspect of its business to the same extent that the taxpayer's sale of its large diameter pipeline business was a liquidation in *McVean & Barlow, Inc. v. New Mexico Bureau of Revenue, supra.*

537 Pa. at 212–13, 642 A.2d at 476. We noted that "the totality of the circumstances surrounding the sale of the . . . pipeline has persuaded us that the transaction is one that can be characterized as a partial liquidation which has changed the structure of the taxpayer's business." 537 Pa. at 214, 642 A.2d at 477.

■ In the instant case, the Board of Finance and Revenue argues that the gain from the sale of the 21.5 acre tract is business income under either the transactional test or functional test set forth in *Welded Tube.* It asserts that the transactional test is satisfied because the land was held for investment purposes, that it was Ross–Araco's regular business practice to acquire and hold investment assets, and the sale proceeds were used to acquire another investment asset, U.S. Treasury Notes. The Board of Finance and Revenue asserts that the gain is business income under the functional

test as well because the 21.5 acres were regularly pledged as collateral to obtain performance bid bonds from insurance companies, and that without performance bid bonds, Ross–Araco could not engage in business as a general construction contractor.

Ross–Araco responds that the gain from the sale was non-business income under the transactional test because it was not derived from transactions in which it regularly engages. Ross–Araco asserts also that the sale cannot be construed as a transaction in the course of a secondary "investment business" because at no time did it or its predecessor ever engage in the business of buying, selling, and holding real estate. Nor is the functional test satisfied as the property was not used to produce income while owned by Ross–Araco.[2]

The Commonwealth Court's determination that the gain from the sale was nonbusiness income under the transactional test was based upon its finding that when the sale is measured against the frequency and regularity of Ross–Araco's past practice of similar real estate transactions, the gain realized from the sale was not derived from transactions in which Ross–Araco regularly engaged. Only one other sale of real property had occurred in the 31 years that Ross–Araco and its predecessors conducted business activity in the Commonwealth. The court dismissed as irrelevant the mere statement of proposed business activities contained in the 1958 application for a certificate of authority to do business in Pennsylvania filed by Araco Construction and Realty Company, Inc., stating that "the relevant consideration under the transactional test is the frequency and regularity of the similar transactions in which Taxpayer was *actually* engaged in the past

2. Ross–Araco relies also upon a regulation adopted by the Department of Revenue that was in effect when the subject property was sold. The regulation, which was formerly found at 61 Pa.Code § 153.24 before its repeal, was issued after the Commonwealth Court's decision in *Welded Tube* and included illustrative examples of business income and non-business income. We need not address Ross–Araco's argument that the regulation is controlling in this case in view of our disposition of its other arguments.

practice of the business." *Ross–Araco v. Commonwealth,* 165 Pa.Cmwlth. at 56, 644 A.2d at 238 (emphasis supplied).

The court also rejected the argument that the gain from the sale is business income from the regular course of Ross–Araco's investment activities. While the record indicates that Ross–Araco maintained substantial investments in U.S. Treasury Notes and mutual funds, there was no evidence that the 21.5 acre tract was directly or indirectly involved in Ross–Araco's investment activities and produced investment income before its sale. The transactional test requires comparison of the transaction at issue with similar transactions of the taxpayer's past business practice. The court stated,

> If we adopt the interpretation of the transactional test urged by the Commonwealth, gain from the sale of any assets owned by the taxpayer would be deemed business income, as long as the taxpayer is engaged in the secondary investment activities, even though the property in question was not directly involved in such activities during the taxpayer's ownership.

*Id.,* 165 Pa.Cmwlth. at 57, 644 A.2d at 239.

The court concluded also that the gain was not business income under the alternative functional test for gain derived from property whose acquisition, management and disposition constitute an integral part of the taxpayer's regular trade or business. The acquisition, management, and disposition of real property were not integral parts of Ross–Araco's regular trade or business. Nor did the real estate produce any income during Ross–Araco's ownership. This case was distinguished from *Welded Tube* in which it was the taxpayer's regular practice to acquire property to expand its business operations.

The fact that Ross–Araco carried the 21.5 acre tract on its balance sheet among the assets which were pledged to obtain performance bid bonds from insurance companies was found to be insignificant when compared with the total amount of Ross–Araco's assets. The parties stipulated that during the period from 1984 to 1989, Ross–Araco's total assets steadily

rose from $4,193,531 to $13,596,554. During that period of time and up until the time of sale, the 21.5 acre tract had been listed on the balance sheet at its original cost value of $11,099.

The Board of Finance and Revenue concedes that the sale of the real estate was not in the regular course of Ross–Araco's construction business, but argues that it was a transaction within the course of its regular and ongoing investment activities. It asserts that the purchase and sale of undeveloped real estate is a passive investment activity similar to the purchase and sale of U.S. Treasury Notes, money market funds, or mutual funds. The use of the sale proceeds to invest additional sums in U.S. Treasury Notes is said to support this position.

Acquisitions and sales of real property may generate business income when the taxpayer regularly engages in such transactions. For example, in *Welded Tube* the taxpayer originally purchased property in Philadelphia as the site of its manufacturing facility in 1957 and then purchased thirteen additional contiguous parcels of land between 1958 to 1963 for the expansion of the facility. In 1974, the taxpayer acquired thirty-five acres of land in Alabama for a new manufacturing facility that was never constructed. The properties in Philadelphia and Alabama were later sold.

Unlike *Welded Tube,* however, the property involved in this case was never improved or used in the construction business. The record indicates that its purchase was incidental to the acquisition of the 3 acre tract on which there was a building suitable for storage of equipment and materials used by Ross–Araco in its construction activities. There is no indication that the 21.5 acres were purchased to expand Ross–Araco's investment portfolio which was used as collateral to secure performance bid bonds. The Commonwealth Court's analysis of the issue was correct.

Based on the foregoing, we conclude that the gain on the sale of the 21.5 acre tract was nonbusiness income. The order of the Commonwealth Court is affirmed.