LENOX, INCORPORATED, Plaintiff v. MURIEL K. OFFERMAN, SECRETARY OF
THE NORTH CAROLINA DEPARTMENT OF REVENUE, Defendant

No. COA99-1267

(Filed 5 December 2000)

**Taxation— nonbusiness income—functional test—partial liquidation—totality of circumstances**

The trial court erred by classifying income received from the complete sale of one of plaintiff multi-state corporation's operating divisions as business income for purposes of taxation in North Carolina under N.C.G.S. § 105-130.4, and this case is remanded for entry of summary judgment in favor of plaintiff, even though a straightforward application of the functional test reveals that plaintiff's regular course of business was devoted to the sale and manufacture of consumer products whereas the pertinent operating division constituted the fine jewelry division of this business making it an integral part of plaintiff's trade or business, because: (1) when the taxable income results from something other than a liquidation of the asset, courts apply the functional test in a straightforward manner, focusing exclusively on whether the asset was integral to the corporation's regular business; (2) when the asset is sold pursuant to a complete or partial liquidation, courts focus on more than whether the asset is integral to the corporation's business and concentrate on the totality of circumstances including the nature of the transaction and how the proceeds are used; (3) the transaction in the instant case can be categorized as a partial liquidation, meaning the totality of circumstances is used to apply the functional test; and (4) the totality of circumstances reveals that the income generated from the liquidation constitutes nonbusiness income based on the facts that plaintiff's entire fine jewelry division was sold, the sale marked the cessation of plaintiff's involvement in that line of business, and the proceeds from the

sale were not reinvested in the company to pay off debts or meet other needs, but were immediately distributed to plaintiff's sole shareholder.

Judge HUNTER dissenting.

Appeal by plaintiff from order entered 9 June 1999 by Judge Henry W. Hight, Jr. in Granville County Superior Court. Heard in the Court of Appeals 12 September 2000.

*Wilson & Iseman, L.L.P., by G. Gray Wilson and Robert C. Bowers, for plaintiff-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General, Kay Linn Miller Hobart, for defendant-appellee.*

LEWIS, Judge.

The narrow issue on appeal is whether income received from the complete sale of one of plaintiff's operating divisions should be classified as business or nonbusiness income for purposes of its corporate tax returns. Plaintiff Lenox, Inc. is a New Jersey-based corporation that does business in several states, including North Carolina. It is engaged in the business of manufacturing and selling various consumer products. Defendant is the North Carolina Secretary of Revenue. In 1970, Lenox formed "ArtCarved" as a separate and distinct operating division devoted exclusively to the manufacture and sale of fine jewelry. As a separate and distinct operating division, ArtCarved had its own president and chief financial officer. It also managed its accounts payable and accounts receivable independent of Lenox. In 1988, Lenox sold ArtCarved for $118,341,000. This marked the complete cessation of Lenox's involvement in the sale and manufacture of fine jewelry. The proceeds from the sale were not reinvested by Lenox but were distributed entirely to its one shareholder, Brown Forman Corporation. The sale created a taxable capital gain for Lenox in the amount of $46,700,194.

Lenox initially paid taxes only in New Jersey on this capital gain. After reviewing Lenox's tax returns, defendant concluded Lenox owed taxes in North Carolina for the sale and assessed Lenox with a capital gains tax of $71,908, which Lenox paid under protest. Lenox then filed this tax refund action to recover the $71,908 it claims it was erroneously taxed. The trial court upheld the tax, and Lenox now appeals.

North Carolina derives its statutory scheme for taxing multi-state corporations from the Uniform Division of Income for Tax Purposes Act ("UDITPA"). 7A U.L.A. 331 (1985). Specifically, we and other UDITPA states divide the income of a multi-state corporation into two classes: "business income" and "nonbusiness income." "Business income" is apportioned among all the states in which the corporation does business and is taxed by each state according to a particular statutory formula. N.C. Gen. Stat. § 105-130.4(I) (1999). "Nonbusiness income" is allocated to, and taxed by, only one state—the state with which the income-generating asset is most closely associated (in this case, New Jersey). N.C. Gen. Stat. § 105-130.4(h). Defendant argues the sale proceeds are "business income" for which Lenox must be taxed in North Carolina. Specifically, defendant contends ArtCarved was an integral part of Lenox's regular manufacturing business, thereby satisfying the statutory definition of "business income." Lenox counters that, because the sale and liquidation of ArtCarved marked the end of Lenox's involvement in the manufacture and sale of fine jewelry, the sale proceeds are more properly classified as "nonbusiness income."

Our statute defines business income as follows:

"Business income" means income arising from transactions and activity in the regular course of the corporation's trade or business and includes income from tangible and intangible property if the acquisition, management, and/or disposition of the property constitute integral parts of the corporation's regular trade or business.

N.C. Gen. Stat. § 105-130.4(a)(1). Nonbusiness income is defined as "all income other than business income." N.C. Gen. Stat. § 105-130.4(a)(5). We conclude the sale of ArtCarved generated nonbusiness income and therefore reverse the trial court.

The seminal case in North Carolina with respect to the application of the business income-nonbusiness income dichotomy is *Polaroid Corp. v. Offerman*, 349 N.C. 290, 507 S.E.2d 284 (1998), *cert. denied*, 526 U.S. 1098, 143 L. Ed. 2d 671 (1999). In that case, our Supreme Court undertook to clarify what is included within the statutory definition of business income. Joining the majority of other UDITPA states, our Court concluded the definition sets forth two separate tests. (A small minority of UDITPA states interpret the statute to provide for only one test. *Id.* at 295, 507 S.E.2d at 289.) According to *Polaroid*, the first part of the statutory definition, which focuses

on "income arising from transactions and activity in the regular course of the corporation's trade or business," sets forth the so-called "transactional test." *Id.* As its name connotes, the transactional test looks to the particular transaction generating the income to determine whether that transaction was done in the ordinary and regular course of business. *Id.* "[T]he frequency and regularity of similar transactions, the former practices of the business, and the taxpayer's subsequent use of the income" are all central to this inquiry. *Id.* The parties are in agreement that the sale of ArtCarved did not generate business income under the transactional test. This transaction was not an ordinary one but an extraordinary one by which Lenox divested an entire division.

The issue here is over the second half of the definition of business income. That half, which focuses on "income from tangible and intangible property if the acquisition, management, and/or disposition of the property constitute integral parts of the corporation's regular trade or business," sets forth the so-called "functional test." *Id.* Under this test, the extraordinary nature or infrequency of the transaction is irrelevant. *Id.* at 296, 507 S.E.2d at 289. Rather, the focus is on the asset or property that generated the income. *Id.* at 306, 507 S.E.2d at 296. If the asset or property was integral to the corporation's trade or business, income generated from the sale of that asset is business income, regardless of how that income is received. *Id.*

On the surface, this would appear to be a straightforward application of the functional test. Lenox's regular course of business was devoted to the sale and manufacture of consumer products. ArtCarved constituted the fine jewelry division of this business. Accordingly, ArtCarved was an asset that was integral to Lenox's trade or business, thereby seemingly satisfying the functional test.

However, application of the functional test in UDITPA states has not always been this straightforward. Although these courts uniformly hold, as our Supreme Court did, that the functional test simply focuses on whether the asset itself was integral to the corporation's regular trade or business, their analyses hinge on other factors as well, including the type of transaction that generated the income. A chronological survey of these cases will help illustrate this reality. Although this survey is quite extensive, we feel it necessary in order to fully understand how various courts have applied the functional test. We only look to cases that have explicitly applied

the functional test; cases either rejecting that test or failing to state upon which test they are relying (even if factually analogous) will not be discussed.

One of the first cases employing the functional test (or at least relying on the second part of the statutory definition) was *McVean & Barlow, Inc. v. New Mexico Bureau of Revenue*, 543 P.2d 489 (N.M. Ct. App. 1975). In that case, a corporation engaged in the business of laying pipelines liquidated part of its business. *Id.* at 490. Specifically, it sold off its "big-inch" pipeline business, continuing operation in only its "little-inch" business. *Id.* The court held the income from this partial liquidation was nonbusiness income. *Id.* at 492. Although the court relied on the second half of the definition in its analysis, it paid more attention to the nature of the transaction than to how the asset had been used in the business. The court reasoned:

> In the present case, taxpayer was not in the business of buying and selling pipeline equipment and, in fact, the transaction in question was a partial liquidation of taxpayer's business and a total liquidation of taxpayer's big inch business. The sale of equipment did not constitute an integral part of the regular trade or business operations of taxpayer. This sale contemplated a cessation of taxpayer's big inch business.

*Id.*

The D.C. Circuit was one of the next courts to apply the functional test. In *District of Columbia v. Pierce Associates, Inc.*, 462 A.2d 1129 (D.C. Cir. 1983), that court dealt with whether a corporation's receipt of insurance payments from one of its flooded manufacturing plants was business income. That court held the payments generated business income under the functional test. *Id.* at 1132. In so holding, the court engaged in a straightforward analysis of the functional test, focusing exclusively on whether the flooded manufacturing plant was an integral part of the corporation's regular trade or business. *Id.*

A few years later, Pennsylvania took its turn addressing the issue. In *Welded Tube Co. v. Commonwealth*, 515 A.2d 988 (Pa. Commw. Ct. 1986), a corporation had sold off one of its two manufacturing facilities pursuant to a corporate reorganization. *Id.* at 990. The Commonwealth Court concluded the sale generated income under both the transactional and functional tests. *Id.* at 994. However, in its analysis, the court focused on the nature of the transaction (noting

that it did not result in the cessation of corporate activities in that business) and how the sale proceeds were used (noting that all the proceeds were distributed within, either to satisfy debts or support its other facility). *Id.*

In *Pledger v. Getty Oil Exploration Co.*, 831 S.W.2d 121 (Ark. 1992), the Arkansas Supreme Court concluded that a corporate subsidiary's receipt of interest on a promissory note between it and its parent amounted to nonbusiness income. *Id.* at 125. In applying the functional test, the court engaged in a rather straightforward analysis, focusing on whether the promissory note was integral to the corporation's regular trade or business. *Id.*

A Pennsylvania court again considered the matter in *Laurel Pipe Line Co. v. Commonwealth*, 642 A.2d 472 (Pa. 1994). In that case, the company engaged in a partial liquidation, completely selling off one of its pipeline operations. *Id.* at 473. The Pennsylvania Supreme Court concluded the sale generated nonbusiness income. *Id.* at 477. In applying the functional test, that court once again focused on factors other than how the property was used by the corporation, relying instead on the "totality of the circumstances." *Id.* Specifically, the court reasoned:

> In our view, the pipeline was not disposed of as an integral part of Laurel's regular trade or business. Rather, the effect of the sale was that the company liquidated a portion of its assets. This is evidenced by the fact that the proceeds of the sale were not reinvested back into the operations of the business, but were distributed entirely to the stockholders of the corporation. Although Laurel continued to operate a second, independent pipeline, the sale of the Aliquippa-Cleveland pipeline constituted a liquidation of a separate and distinct aspect of its business.

*Id.* at 475.

Next, in *Dover Corp. v. Department of Revenue*, 648 N.E.2d 1089 (Ill. App. Ct. 1995), an Illinois court concluded that both royalties received from licenses and royalty income received from patent infringements constituted business income. *Id.* at 1097. In so doing, the court engaged in a straightforward analysis of the functional test, focusing on the fact that the royalties were used to further its business. *Id.* A year later, in *Ross-Araco Corp. v. Commonwealth*, 674 A.2d 691 (Pa. 1996), the Pennsylvania Supreme Court held that a construction company's sale of an undeveloped tract of land was non-

LENOX, INC. v. OFFERMAN

[140 N.C. App. 662 (2000)]

business income. *Id.* at 697. However, contrary to what it had done just two years prior in *Laurel Pipe Line*, that court undertook a straightforward application of the functional test, relying simply on the fact that the property sold was never used in the company's construction business. *Id.*

Proceeds from the sale of leasehold interests was at issue in *Kroger Co. v. Department of Revenue*, 673 N.E.2d 710 (Ill. App. Ct. 1996). The Illinois court concluded the sale generated business income under the functional test. *Id.* at 716. In so doing, the court focused exclusively on whether the leasehold interests themselves were integral parts of the company's regular trade or business. *Id.* Next, the Oregon Supreme Court considered whether monies received from the federal government's condemnation of a portion of a corporation's land was business income. *Simpson Timber Co. v. Department of Revenue*, 953 P.2d 366 (Or. 1998). Although the court never employed the term "functional test," it did rely upon the second half of the definition in concluding the monies constituted business income because the condemned land was integral to the company's business. *Id.* at 369-70.

The next case to apply the functional test was *Texaco-Cities Service Pipeline Co. v. McGaw*, 695 N.E.2d 481 (Ill. 1998). There, a company partially liquidated its assets, selling off a non-operational pipeline and the associated real estate. *Id.* at 483. The Illinois Supreme Court ultimately held the sale generated business income. *Id.* at 487. However, in applying the functional test, the court did not concentrate exclusively on how the property had been used; it relied on the totality of the circumstances. Specifically, it noted that the sale did not mark the cessation of the company's activity in that line of business. *Id.* at 486-87. The court also pointed out that the sale proceeds were reinvested in the company, as opposed to being distributed to its shareholders. *Id.* at 487.

Our own Supreme Court then entered the fray. In *Polaroid*, the Court concluded that damages received from certain patent infringements were business income. *Polaroid*, 349 N.C. at 315, 507 S.E.2d at 301. In so doing, the Court engaged in a straightforward analysis of the functional test, focusing on whether the income-generating asset (i.e., the patents) was integral to the corporation's regular trade or business. *Id.* at 306, 507 S.E.2d at 295-96. Thereafter, that Court concluded the reversion of a surplus from an employee pension plan constituted nonbusiness income. *Union Carbide Corp. v. Offerman*, 351 N.C. 310, 317, 526 S.E.2d 167, 171 (2000). In so holding, the Court sim-

**LENOX, INC. v. OFFERMAN**

[140 N.C. App. 662 (2000)]

ply considered whether the assets of the pension plan were used to generate income in the regular course of business; they were not. *Id.* at 315-17, 526 S.E.2d at 170-71. Finally, in *Hoechst Celanese Corp. v. Franchise Tax Board*, 90 Cal. Rptr. 2d 768 (Ct. App.), *petition for review granted*, 996 P.2d 1151 (2000), the California Court of Appeals similarly held that the reversion of a surplus from an employee pension plan constituted nonbusiness income. *Id.* at 779. That court also applied the functional test in a straightforward manner, focusing on the fact that the pension plan was not integral to the corporation's regular business. *Id.* at 778-79.

The foregoing survey can be synthesized as follows. When the taxable income results from something other than a liquidation of the asset, courts apply the functional test in a straightforward manner, focusing exclusively on whether the asset was integral to the corporation's regular business. But, as *McVean & Barlow, Welded Tube, Laurel Pipe Line*, and *Texaco-Cities* demonstrate, when the asset is sold pursuant to a complete or partial liquidation, courts focus on more than whether or not the asset is integral to the corporation's business. Instead, they concentrate on the totality of the circumstances, including the nature of the transaction and how the proceeds are used. In this regard, whether the liquidation results in a complete cessation of the company's involvement in that line of business is particularly relevant. Cessation ultimately justified treating the gains as nonbusiness income in *McVean & Barlow* and *Laurel Pipe Line*, whereas noncessation justified classification as business income in *Welded Tube* and *Texaco-Cities*.

Although neither the UDITPA nor the North Carolina statutes explicitly distinguish between liquidations and other situations, this distinction has not gone unnoticed by the courts. In *Polaroid*, our Supreme Court observed in a footnote:

> We do note, however, that cases involving liquidation are in a category by themselves. Indeed, true liquidation cases are inapplicable to these situations because the asset and transaction at issue are not in furtherance of the unitary business, but rather a means of cessation.

*Polaroid*, 349 N.C. at 306 n.6, 507 S.E.2d at 296 n.6. And the Alabama Supreme Court recently made a similar observation: "Moreover, even courts applying the functional test have excepted true liquidations from its application." *Uniroyal Tire Co. v. State Dep't of Revenue*, No. 1981928, 2000 WL 1074041, at *11 (Ala. 2000).

Defendant tries to distinguish the above cases on the ground that our statute is slightly different than the UDITPA and other states' version. Specifically, our statute defines business income as including "income from tangible and intangible property if the acquisition, management, *and/or* disposition of the property constitute integral parts of the corporation's regular trade or business." N.C. Gen. Stat. § 105-130.4(a)(1) (1999) (emphasis added). The UDITPA and other states' version only uses "and" instead of "and/or" in defining business income. 7A U.L.A. 331 (1985). Defendant thus argues that, in North Carolina, satisfaction of the functional test only requires that either the acquisition, management, *or* disposition of the asset be integral to the business, whereas in other states, all three—the acquisition, management, *and* disposition—must be integral. Although our statutory distinction perhaps evinces a slightly broader meaning of the functional test, the distinction was irrelevant for purposes of *Polaroid*, 349 N.C. at 294 n.3, 507 S.E.2d at 288 n.3, and we find the distinction to be irrelevant here.

With this framework in mind, we now proceed to the case at hand. First, the transaction here can be categorized as a partial liquidation. By selling off ArtCarved, Lenox divested its fine jewelry division. Accordingly, this case falls within the framework of *McVean & Barlow*, *Welded Tube*, *Laurel Pipe Line*, and *Texaco-Cities*, and we therefore look to the totality of the circumstances in applying the functional test. Here, Lenox's entire fine jewelry division was sold, and the sale marked the complete cessation of Lenox's involvement in that line of business. While Lenox continues to manufacture and sell other consumer products, it no longer manufactures and sells fine jewelry. The proceeds from the sale of ArtCarved were not reinvested in the company to pay off debts or meet other needs but were immediately distributed to Lenox's sole shareholder. This case is thus quite analogous to *McVean & Barlow* and *Laurel Pipe Line*, both of which classified the proceeds of sales as nonbusiness income. Given the totality of the circumstances here, we hold that the income generated from the liquidation of ArtCarved constitutes nonbusiness income. We therefore reverse the trial court and remand for entry of summary judgment in favor of plaintiff.

Reversed and remanded.

Judge WALKER concurs.

Judge HUNTER dissents.

**LENOX, INC. v. OFFERMAN**

[140 N.C. App. 662 (2000)]

Judge HUNTER dissenting.

My reading of *Polaroid Corp. v. Offerman*, 349 N.C. 290, 507 S.E.2d 284 (1998), *cert. denied*, 526 U.S. 1098, 143 L. Ed. 2d 671 (1999) causes me to disagree with the majority opinion. Therefore, I respectfully dissent.

It is undisputed in the record before us that although Lenox argues that "[f]rom 1970 until 1988, . . . ArtCarved . . . remained a functionally and financially distinct entity from Lenox," Lenox never filed tax returns with either the Internal Revenue Service or with the State of North Carolina "separat[ing] the income or gross receipts associated with the ArtCarved division from the general business receipts of Lenox." Instead, Lenox's tax returns always showed the assets of ArtCarved as producing a "business income" for Lenox as opposed to "nonbusiness income." Furthermore:

On all tax returns filed with North Carolina . . . Lenox . . . affirmatively treated ArtCarved as an integral part of its unitary business operations, part of which were conducted in this State.

. . .

At no time . . . did Lenox separate the expenses associated with the ArtCarved division, such as administrative expenses for overhead or salary associated with the personnel of the ArtCarved division, from the general administrative expenses of Lenox. At no time were the expenses associated with the assets of the ArtCarved division, such as depreciation, insurance, overhead, [or] taxes, separated from the general business expenses of Lenox. Rather, Lenox classified the expenses associated with the ArtCarved division, its personnel and assets as "business" expenses rather than "nonbusiness" expenses, which it deducted against its "business income" reducing the amount of business income subject to taxation in North Carolina.

Nevertheless, the majority believes that because Lenox is now ceasing to operate ArtCarved, its fine jewelry division, Lenox should be given the advantage of claiming that income derived from the sale of ArtCarved is "nonbusiness" income. I cannot agree.

Lenox admits that when it sold its line of melamine dinnerware in 1986, it reported the sale as a business income loss which resulted in reducing its taxable income. Lenox further admits that when it sold

its candle division in 1987, it reported the sale as a business income loss as well, again resulting in a reduction of Lenox's taxable income for the year. Thus, I do not believe it to be consistent with our tax laws that Lenox now be allowed to claim the sale of its fine jewelry division as nonbusiness income. I realize that Lenox attempts to distinguish the dinnerware and candle division sales from this present fine jewelry division sale by arguing that with the prior two it "did not sell its brand name and attendant goodwill," so that it continues to sell dinnerware and candles. However, I do not believe that matters. All three divisions were "integral parts" of Lenox's trade or business operations and thus, the sale of each produced business income as defined by N.C. Gen. Stat. § 105-130.4(a)(1) (1999). Thus, I believe the majority errs when it opines that

> [w]hen the taxable income results from something *other than* a liquidation of the asset, courts apply the functional test in a straightforward manner, focusing exclusively on whether the asset was integral to the corporation's regular business. But . . . when the asset is sold pursuant to a complete or partial liquidation, courts focus on more than whether or not the asset is integral to the corporation's business. Instead they concentrate on the totality of the circumstances, including the nature of the transaction and how the proceeds are used. In this regard, whether the liquidation results in a complete cessation of the company's involvement in that line of business is particularly relevant. . . .

(Emphasis added.)

I acknowledge, along with the majority, that Lenox's disposition of its ArtCarved division does not fall within the definition of business income as applied by the "transactional test." However, I do not agree that it does not comply with the definition of business income as applied by the "functional test." The majority correctly states that the functional test "focuses on income from tangible and intangible property if the acquisition, management, and/or disposition of the property constitute integral parts of the corporation's regular trade or business." The majority further acknowledges that "[u]nder this test, the extraordinary nature or infrequency of the transaction is irrelevant," instead, "[i]f the asset or property was integral to the corporation's trade or business, income generated from the sale of that asset is business income, regardless of how that income is received." (Citing *Polaroid Corp. v. Offerman*, 349 N.C. 290, 306, 507 S.E.2d 284,

296 (1998)). Nevertheless, the majority then goes on to analyze a great many cases determined throughout the nation, in an effort to prove that the "application of the functional test" is not as straightforward as its definition. Again, I cannot agree.

First of all, it must be noted that:

North Carolina's definition of business income is slightly broader than the definition found under the Uniform Act. Specifically, North Carolina's definition reads "acquisition, management, *and/or* disposition of the property," as opposed to the definition in UDITPA, which uses the conjunction "and" rather than "and/or." Moreover, North Carolina's definition utilizes the term "corporation" instead of "taxpayer." *These distinctions are irrelevant to the case sub judice.*

*Polaroid Corp. v. Offerman,* 349 N.C. 290, 294, 507 S.E.2d 284, 288 n.3 (emphasis added). It must be noted that the *Polaroid* court found the distinctions irrelevant because the case had nothing to do with the disposition of corporate property. The majority seems to feel that because the court in *Polaroid* found the distinctions irrelevant, they are also irrelevant in the case at bar. However, because the present case is *only* about the disposition of corporate property, I believe it is this particular distinction in North Carolina's statute upon which this case turns.

"[T]he legislature is always presumed to act with full knowledge of prior and existing law and . . . where it chooses not to amend a statutory provision that has been interpreted in a specific way, we may assume that it is satisfied with that interpretation." *Id.* at 303, 507 S.E.2d at 294. Thus where, as here, the legislature chose to add "or" to the statute, we are compelled to presume that it intended to create the new distinction. Therefore, the fact that our state statute requires *only* that the "disposition of the property constitute integral parts of the corporation's regular trade or business operations," and not the "acquisition and management" as well, serves as notice that as long as the asset handled by the corporation produced income as an integral part of the corporation's regular trade or business operations, that income is business income. N.C. Gen. Stat. § 105-130.4(a)(1).

I am further convinced because " 'an interpretation by the Secretary of Revenue is *prima facie* correct. . . .' " *Polaroid,* 349 N.C. at 302, 507 S.E.2d at 293 (quoting *In re Petition of Vanderbilt Univ.,*

252 N.C. 743, 747, 114 S.E.2d 655, 658 (1960)). See also N.C. Gen. Stat. § 105-246 (Supp. 1994). Therefore, our Supreme Court held that the burden is on the taxpayer to rebut the presumption. *Polaroid,* 349 N.C. at 302, 507 S.E.2d at 293. North Carolina's Secretary of Revenue "has adopted the UDITPA approach of defining business income to include both the transactional test and the functional test." *Id.* Thus, in its Administrative Rule 17 NCAC 5C .0703(2) (June 2000), regarding business and nonbusiness income, business income is defined as "[a] gain or loss from the sale, exchange, or other disposition of real or personal property . . . if the property *while owned by the taxpayer* was used to produce business income. . . ." *Id.* (emphasis added). In the case at bar, I do not believe that Lenox has rebutted that presumption, and I would so hold.

It is undisputed that ArtCarved was an integral part of Lenox's business, used to produce income, *while it was owned by Lenox.* Yet, Lenox argues and the majority agrees that because selling ArtCarved was a "partial liquidation," the sale does not generate business income because it falls outside of the transactional or functional tests set out in *Polaroid.* However, although I agree with the majority that "the transaction here can be categorized as a partial liquidation[,] [and that] [b]y selling off ArtCarved, Lenox divested its fine jewelry division," I cannot agree that this partial liquidation status removes the income gained from *Polaroid*'s application and instead requires a "totality of the circumstances" application, as determined by the majority. I recognize that our Supreme Court opined *in a footnote* that a finding that the assets sold constitute integral parts of the corporation's regular trade or business is irrelevant in these cases. "[T]rue liquidation cases are inapplicable to these situations because the asset and transaction at issue are not in furtherance of the unitary business, but rather a means of cessation." *Polaroid,* 349 N.C. at 306, 507 S.E.2d at 296 n.6. Lenox thus argues that *Polaroid* set out a third test for liquidation cases, which I believe is incorrect. Nevertheless, I find that Lenox's divestment of ArtCarved is not a "true liquidation," and thus it *is* in furtherance of the unitary business.

According to Black's Law Dictionary, liquidation is "[t]he act or process of converting assets into cash, esp. to settle debts." Black's Law Dictionary 942 (7th ed. 1999). Furthermore, partial liquidation is defined as "[a] liquidation that does not completely dispose of a company's assets . . . and the corporation continues to operate in a restricted form." *Id.* Both the United States Supreme Court and our own Supreme Court discuss a "complete liquidation, [as one in

which] all of the assets of the corporation are distributed in complete liquidation" with the intent of ceasing the corporation's entire business operations, *Hillsboro National Bank v. Commissioner*, 460 U.S. 370, 399, 75 L. Ed. 2d 130, 156 n.36. (1983), and "thereby terminating the existence of the [corporation] . . . ." *Shuford v. Building & Loan Asso.*, 210 N.C. 237, 239, 186 S.E. 352, 353 (1936). Thus, although the *Polaroid* court did not define "true liquidation," I believe we are safe in assuming that a "true liquidation" (as mentioned by *Polaroid*) is the same as a complete liquidation—and as such, because Lenox admits its divestment of ArtCarved was only a "partial liquidation" and not a complete liquidation, Lenox's corporate restructuring does not qualify. Therefore, I disagree with Lenox and the majority in their rationalization that as a partial liquidation, Lenox's restructuring should not come under the functional test.

Instead, I agree with the State's argument that Lenox's restructuring was a directed effort to boost its unitary business of manufacturing and selling consumer durable goods in the retail market. And although the company's intent was to cease the manufacturing and selling of fine jewelry, the sale of that division was intended to enable the company to better focus on selling more of its other manufactured goods. Therefore, the sale of ArtCarved also was to benefit Lenox's unitary business.

Furthermore, our Supreme Court has acknowledged that "the uniform definition of business income, as set forth in UDITPA, finds its origins in early California jurisprudence"; thus, the Court found California cases on point to be quite persuasive. *Polaroid*, 349 N.C. at 304, 507 S.E.2d at 294. Accordingly, I find *In re Appeal of Triangle Publ'n., Inc.*, 1984 WL 16175, 1984 Cal. Tax Lexis 86 (Cal. St. Bd. of Equal. June 27, 1984) (per curiam) directly on point. In that case, California's State Board of Equalization ("Board") had to determine whether income gained by Triangle Publications' ("Triangle") sale of its media divisions, by installment contracts and afterward transferred to TFI (its wholly-owned subsidiary), was business income to the parent company, Triangle. Because California's version of UDIPTA's definition of business income requires that "acquisition, management, *and* disposition of the property constitute integral parts of the taxpayer's regular trade or business," *In re Appeal of Triangle Publ'n., Inc.*, 1984 WL 16175, at *2, 1984 Cal. Tax Lexis 86, at *4 (emphasis added), Triangle argued that the sale of its assets was an extraordinary or occasional sale and thus was not business income—even though while owned, Triangle had used the property to

produce business income. *Id.* Citing earlier decisions it had rendered, the Board stated that it had "specifically rejected the reasoning of the Kansas and New Mexico decisions" opining the same view as argued by Triangle. *Id.* at *2, 1984 Cal. Tax Lexis at *7. (This rejection included *McVean & Barlow, Inc. v. New Mexico Bureau of Rev.*, 88 N.M. 521, 543 P.2d 489 (Ct. App.), *cert. denied*, 89 N.M. 6, 546 P.2d 71 (Sup. Ct. 1975), upon which the majority relies.) Instead, the Board stated that California had readily accepted that there were two alternative tests under the Code, including the functional test; and under that test,

> income from the disposition of an asset is generally business income *if the asset produced business income while owned by the taxpayer*; there is no requirement that the transaction giving rise to the income occur in the regular course of the taxpayer's trade or business.

> [Therefore,] [t]he income from the sales of the divisions and the building falls squarely within the ambit of the functional test. They were all reported by [Triangle] as parts of its unitary business, and any income or loss from them while owned by [Triangle] was apparently reported by [Triangle] as business in character. [Triangle's] contention on appeal that the divisions were separate businesses directly contradicts, without basis, its own earlier characterization. . . .

*In re Appeal of Triangle Publ'n., Inc.*, 1984 WL 16175, at *3, 1984 Cal. Tax Lexis 86, at *7-8 (emphasis added).

Comparing the case at bar to the *Triangle* case, I see no difference in what Lenox did and what Triangle did. Both corporations counted any income or loss from the asset sold as business income/loss *while the asset was under their ownership*. In addition, North Carolina's statute does not require that the corporation's acquisition and management of the asset be integral parts of the business *along with* the corporation's disposition of the same asset. Thus, where California can find all three requirements exist as to Triangle, I believe this Court is bound upon the finding of only one.

Likewise, I am persuaded by another California case, *In re Appeal of Borden, Inc.*, 1977 WL 3818, 1977 Cal. Tax Lexis 108 (Cal. St. Bd. of Equal. Feb. 3, 1977) (per curiam), upon which *Triangle Publications* was based. In *Borden*, the Board held that the key to both the transactional and functional tests is the concept of "unitary

income." *In re Appeal of Borden, Inc.*, 1977 WL 3818, at *2, 1977 Cal. Tax Lexis 108, at *3-4. The Board stated that under prior California law,

> income from tangible or intangible property was considered unitary income, subject to apportionment by formula, if the acquisition, management, and disposition of the property constituted integral parts of the taxpayer's unitary business operations. *Where that requirement was satisfied, income from such assets was considered unitary income even if it arose from an occasional sale or other extraordinary disposition of the property. . . .*
>
> The underlying principle in these cases is that any income from assets which are integral parts of the unitary business is unitary income. It is appropriate that all returns from property which is developed or acquired and maintained through the resources of and in furtherance of the business should be attributed to the business as a whole. And, with particular reference to assets which have been depreciated or amortized in reduction of unitary income, *it is appropriate that gains upon the sale of those assets should be added to the unitary income.*

*Id.* at *2, 1977 Cal. Tax Lexis at *4-5 (citations omitted) (emphasis added).

Again, I find no distinguishing factors between *Borden* and the case before us. It is undisputed that Lenox reported any income or loss with regard to ArtCarved as business income or loss while it owned ArtCarved. Thus, I would hold that income from the sale of ArtCarved was also business income.

Conversely, while the majority finds *Laurel Pipe Line Co. v. Pennsylvania*, 537 Pa. 205, 642 A.2d 472 (1994) analogous, I do not agree it is applicable. The distinguishing fact in that case is that Laurel had ceased to operate the pipeline at issue three full years before disposing of it. Thus, I agree with the *Laurel* court that "the pipeline was not disposed of as an integral part of Laurel's regular trade or business. Rather, the effect of the sale was that the company liquidated a portion of its assets." *Id.* at 211, 642 A.2d at 475. Therefore, I do not agree with the majority opinion, in its recitation of *Laurel*, that the court's determination was based on "factors other than how the property was used by the corporation." Instead, the only important factor was whether, *while Laurel owned it,* the

pipeline constituted integral parts of Laurel's regular trade or business. After three years of sitting dormant, how could it have reasonably been said that the disposed-of pipeline was integral to Laurel's regular trade or business?

Likewise, while the majority cites *McVean & Barlow, Inc. v. New Mexico Bureau of Rev.*, 88 N.M. 521, 543 P.2d 489 to support its position, I disagree that it applies. In *McVean*, the corporation was in the business of laying pipelines. In the course of a major reorganization, the corporation liquidated its "big-inch" pipeline business. *Id.* at 522, 543 P.2d at 490. The state Commissioner of Revenue held that because the taxpayer had "testified that he regularly bought and/or sold as much as five hundred thousand dollars worth of equipment annually, of the types the receipts of which are taxed in the instant assessment," the taxpayer was in the business of buying and selling pipeline equipment and thus, income from the sale of its "big-inch" pipeline business was business income. *Id.* However, New Mexico's Court of Appeals reversed the Commissioner's ruling, opining that because the taxpayer's "buying and selling of equipment was done in the course of replacing used or scrapped equipment used in the business with new," the taxpayer was not in the business of buying and selling pipeline equipment. *Id.* Thus, the court stated:

". . . It is not the use of the property in the business which is the determining factor under the statute. The controlling factor by which the statute identifies business income is the *nature of the particular transaction giving rise to the income.* To be business income the transaction and activity must have been in the regular course of taxpayer's business operations."

*Id.* at 523, 543 P.2d at 491 (emphasis added) (quoting *Western Natural Gas Co. v. McDonald*, 202 Kan. 98, 101, 446 P.2d 781, 783 (1968)). Therefore, the court held that *McVean* "was a partial liquidation of taxpayer's business and a total liquidation of taxpayer's big inch business. The sale of equipment did not constitute an integral part of the regular trade or business operations of taxpayer. This sale contemplated a cessation of taxpayer's big inch business." *Id.* at 524, 543 P.2d at 492.

Our Supreme Court has already held that "[w]hen determining whether a source of income constitutes business income under the functional test, *the extraordinary nature or infrequency of the event is irrelevant." Polaroid,* 349 N.C. at 296, 507 S.E.2d at 289 (emphasis added). Therefore, I believe the majority errs by relying on the

*McVean* court's reasoning when it is in direct conflict with our own Supreme Court's holding.

Furthermore, under the functional test, the fact that the proceeds from the sale were distributed to its shareholders as a dividend does not preclude the gain from being business income. *See Simpson Timber Co. v. Dept. of Revenue*, 326 Or. 370, 373, 953 P.2d 366, 368 (1998) (proceeds gained from municipal condemnation of taxpayer's timberland held to be business income even though taxpayer "distributed $49 million of the [gain] to its shareholders as a 'dividend.' None of the delay compensation was reinvested in timberland anywhere").

Having found no case law which deters me from my interpretation of *Polaroid*, I would hold that the sale of ArtCarved generated business income for Lenox. Thus, I would affirm the trial court's ruling.